**George S. CHILDS, Jr. and Karyn L. Childs, as Parents and Next Friends of the Minor Child Karis A. Childs, Petitioners,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 94–607V.

United States Court of Federal Claims.

June 8, 1995.

William Connelly, Camp Springs, MD, for petitioners.

Virginia A. Kozak, Washington, DC, for respondent.

## OPINION

BRUGGINK, Judge.

This is an action brought pursuant to the National Vaccine Injury Compensation Act ("Vaccine Act"), 42 U.S.C. §§ 300aa–10 to 300aa–34 (1988 & Supp. V 1993). The matter is before the court on a Motion for Review of the Order of Special Master Millman dismissing the petition as untimely. The matter is fully briefed. Oral argument is deemed unnecessary. For the reasons set out herein, the motion is denied.

### BACKGROUND

On February 14, 1991, Karis Childs, a minor child and daughter of petitioners, George G. Childs and Karyn L. Childs, received her fourth diphtheria-pertussis-tetanus (DPT) vaccination, as well as an oral polio vaccine and a haemophilus influenzae type B vaccination. On the evening of February 16, 1991, Karis became stiff, her eyes deviated to the left, and her left arm shook for a few minutes. After being taken to Mary Immaculate Hospital Emergency Room with a 103.8–degree fever, she was diagnosed as having had a probable febrile seizure. It was noted that Karis had received a DPT vaccine two days earlier. Karis had no history of febrile seizures or seizure disorder. She was further observed the next day at Children's Hospital of the King's Daughter, but no specific cause of the seizure episode was uncovered.

On September 17, 1991, Karis suffered another seizure and was again taken to the emergency room. Upon further observation at Children's Hospital of the King's Daughter, she was diagnosed with "benign occipital epilepsy of childhood," a temporary seizure disorder, and placed on Tegretol, an anti-seizure medication. Following this seizure, Karis' electroencephalogram was interpreted as abnormal. On November 4, 1992, while on medication, Karis suffered a seizure and was taken to the emergency room at Arnold Palmer Hospital for Children and Women in Orlando, Florida. The medical records show Karis has developed a history of febrile and afebrile seizures since being placed on Tegretol. After previously noting on June 1, 1993

that the seizures were of unknown etiology, Svinder S. Toor, M.D., Karis' pediatric neurologist, noted on June 22, 1993 that her seizures were "of occipital lobe origin."

On September 16, 1994, petitioners filed a Petition for Relief under the Vaccine Act, on behalf of Karis. They alleged that Karis suffered an on-Table[1] residual seizure disorder (RSD) and encephalopathy as a result of her DPT vaccination on February 14, 1991. They alleged that the onset of symptoms was on February 16, 1991, when Karis suffered a febrile seizure.

■ On January 26, 1995, the special master granted respondent's motion to dismiss on the basis that the limitations period had expired. In doing so, the special master rejected the argument that the limitations period runs from the November 4, 1992 episode, stating that the "discovery doctrine"[2] does not apply to § 16(a)(2). She also rejected petitioners' argument that the November 4, 1992 episode was a "significant aggravation" under § 16(a)(2) because it did not involve a pre-existing condition.

On February 23, 1995, petitioners filed a Motion for Review of Order Granting Motion to Dismiss and a Memorandum of Objections, pursuant to RCFC, App. J, Rules 23, 24, stating that the special master misinterpreted the language "significant aggravation of such injury" in § 16(a)(2). They do not contest the special master's finding that the discovery doctrine does not apply here.

### DISCUSSION

■ When reviewing a decision by the special master § 12(e)(2) of the Vaccine Act permits this court to set aside any findings that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The sole dispositive issue here is whether the special master correctly applied the statute of limitations provision of the Vaccine Act. This is a question of law to

be reviewed under the "not in accordance with law" standard. 42 U.S.C. § 300aa–12(e)(2); *See Munn v. Secretary, DHHS,* 970 F.2d 863, 870 (Fed.Cir.1992).

The Vaccine Act, in § 16(a)(2), provides that:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation ... for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury....

42 U.S.C. § 300aa–16(a)(2). The date of accrual of the claim is the same milestone used to determine whether petitioners would have a rebuttable presumption of causation from the Vaccine Injury Table ("Table"). Thus, in the case of a DPT vaccination, a petitioner must show that "the first symptom or manifestation of onset or of the significant aggravation of such injuries" occurred within three days of administration of the vaccine to have a presumption of causation in a claim for vaccine-related encephalopathy. 42 U.S.C. §§ 300aa–14(a), 300aa–11(c)(1)(C); *c.* 42 U.S.C. § 300aa–16(a)(2).

■ Petitioners argue that in this case the thirty-six-month limitations period runs from the seizure episode of November 4, 1992. Respondent counters that the term "significant aggravation" applies only to conditions that pre-existed the vaccination. Because the injury at issue here was not an aggravation of a pre-existing condition but instead was allegedly caused by the vaccination, respondent argues that the action arose as of the first seizure episode in February 1991.

When § 16(a)(2) is considered in isolation, it can reasonably be construed to mean that the limitations period runs from the date of aggravation *of an injury caused by the vaccination itself.* Omitting words extraneous to

---

1. A Table injury is an injury, disability, illness or condition listed on the Vaccine Injury Table. 42 U.S.C. § 300aa–14(a).

2. Petitioners originally argued that they had no knowledge of the cause of the seizures until the November 4, 1992 episode and that the statute of limitations should be tolled for that reason. This

argument is not advanced in the motion for review. The court in any event agrees with the holding of *Melendez v. Secretary, HHS,* No. 94–103V (Ct. of Fed.Cl. Jan. 6, 1995), that lack of knowledge of a connection between the injury and the vaccination is not a grounds for tolling.

the plaintiffs' statutory construction argument, the paragraph reads as follows:

> [I]f a vaccine-related injury occurred as a result of the administration of [a] vaccine, no petition may be filed ... for such injury after the expiration of 36 months after the date of ... the significant aggravation of such injury....

Read literally, "such injury" appears to refer to the "vaccine-related injury" mentioned earlier in the same paragraph. The language thus seems to mean that the "injury" and the aggravation are distinct phenomena. Petitioners contend that this construction conveys the statute's intended meaning. In their view, the seizure episode suffered on February 16, 1991, two days after Karis received the DPT vaccine, was a vaccine-related injury, and it was this injury that was significantly aggravated twenty-one months later, on November 4, 1992.

There are two problems with petitioners' argument. The first is a factual problem that flows from petitioners' construction. As the special master found, the February 16, 1991 seizure episode constitutes the occurrence of Karis' first symptom. This finding is supported by petitioners' filing for compensation, in which they alleged an on-Table injury within the Table time frame (based on Karis' February 16 seizure, which occurred within the three-day window following her February 14 vaccination). Petitioners then argue that Karis' seizure episode of November 4, 1992 constituted the "significant aggravation" of her initial injury. They offer no evidence, however, of a motive force that "aggravated" her injury. Webster's dictionary defines "aggravate" as "to make worse." Webster's II New Riverside University Dictionary 86 (1988). This definition plainly implies the presence of an agent or force acting to make the condition worse. Here the agent or force must be a vaccination. However, Karis received no additional vaccinations between February 1991 and November 1992, and the vaccination she received in February 1991 could not both be cause the injury and simultaneously aggravate it. The seizure Karis suffered in November 1992 was an additional seizure episode, not an "aggra-vation" of her initial seizure episode. The number of seizures simply increased.

The second difficulty for petitioners is that their interpretation of the limitations provision assumes the existence of liability where none was intended. By its very nature, a statute of repose such as § 16 cannot create liability where it does not otherwise exist. The full extent of potential liability is spelled out, insofar as relevant to this petition, by § 11 of the Vaccine Act. Petitioners have invoked the language of § 11(c)(1)(C)(i), which permits recovery by a person who:

> sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table ... and the first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury or condition ... occurred with [72 hours].

42 U.S.C. § 300aa–11(c)(1)(C)(i). There can be no question that the reference here to "significant aggravation" is to the action of the vaccine on a pre-existing condition, i.e., a condition not precipitated by the vaccination in question. This is made clear by the definition of the phrase "significant aggravation" as "any change for the worse in a preexisting condition which results in markedly greater disability, pain, or illness accompanied by substantial deterioration of health." 42 U.S.C. § 300aa–33(4).

The legislative history of the Vaccine Act emphasizes this limited scope of the phrase:

> The committee has included significant aggravation in the [Vaccine Injury] Table in order not to exclude serious cases of illness because of possible minor events in the person's past medical history. This provision does not include compensation for conditions which might legitimately be described as preexisting (e.g., a child with monthly seizures who, after vaccination, has seizures every three and a half weeks), but is meant to encompass serious deterioration (e.g., a child with monthly seizures who, after vaccination has seizures on a daily basis). The Committee also intends that the time periods set forth in the Table apply to the significant aggravation in order for causation to be deemed to exist (e.g., a significant deterioration of a seizure

disorder after vaccination must first become manifest within three days of the vaccination).

H.R.Rep. No. 908, 99th Cong., 2d sess. 15, 16 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6344, 6356–57.

 Congress plainly intended that petitioners with pre-existing conditions significantly aggravated within the statutory time period after vaccination would enjoy a presumption of entitlement to reimbursement. While the wording of the limitations period is not fully consistent with the way in which the phrase "significant aggravation" is used elsewhere in the statute, the language in the limitations section must be harmonized with the language in the liability provisions. The only way to do that is to assume Congress did not intend that a worsening of a condition brought on by vaccination would mark a new date for commencing the running of the three-year limitations period.

This view is supported by cases involving claims of significant aggravation. All involve pre-existing conditions such as tuberous sclerosis, oculo-cerebral dysgenesis, or a pre-existing seizure disorder. *See, e.g., Skinner v. Secretary, DHHS,* 32 Fed.Cl. 196, 199 (1994) (may be case of significant aggravations of a pre-existing seizure disorder); *Suel v. Secretary, DHHS,* 31 Fed.Cl. 1, 7–8 (1993) (tuberous sclerosis); *Roedl v. Secretary, DHHS,* 28 Fed.Cl. 740, 745–46 (1993) (pre-existing seizure disorder); *Misasi v. Secretary, DHHS,* 23 Cl.Ct. 322 (1991) (tuberous sclerosis).

 When evaluating the merits of a significant aggravation claim, the special master examines the condition prior to and after vaccination to evaluate the significance of the change in condition. *See Shalala v. Whitecotton,* —— U.S. ——, ——, 115 S.Ct. 1477, 1479, 131 L.Ed.2d 374 (1995) (referring to special master's finding regarding basis for implicating that vaccine is cause of condition). If that condition is significantly worse within the three-day statutory time period, then the presumption is strong that the vaccination caused the deterioration of health. In this case, Karis had no history of seizures or encephalopathy prior to receiving the vaccination on February 14, 1991. Thus, the vaccination could not have aggravated a pre-existing condition.

## CONCLUSION

The special master correctly interpreted § 16(a)(2) to require a pre-existing condition prior to vaccination. The action therefore accrued in February 1991, and the petition is untimely. The decision below is affirmed. The Clerk is directed to enter judgment accordingly.