Andrew GOETZ and Catherine Goetz as Parents and Personal Representatives of Hayden L. Goetz Petitioners,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.

No. 99–127 V.

United States Court of Federal Claims.

Nov. 4, 1999.

Peter Sarda, Raleigh, North Carolina, for petitioners.

Karen P. Hewitt, U.S. Department of Justice, Washington, D.C., for respondent.

## OPINION

WIESE, Judge.

Petitioners, the parents and legal representatives of a child allegedly injured by a DPT vaccine, sue here to set aside a decision of the Office of Special Masters denying compensation under the National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99–660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa–1 to 300aa–34 (1994 & Supp. I 1995))("Vaccine Act"). Specifically, the special master found that petitioners' claim was not filed within the three-year limitations period established by the Vaccine Act. § 300aa–16(a)(2). The special master also rejected petitioners' request that the limitations period be tolled on equitable grounds until the date on which petitioners filed their claim.

The case is now before the court on petitioners' motion for review. The parties have filed written briefs and oral argument was heard on September 22, 1999. For the reasons set forth below, we deny petitioners' appeal and affirm the decision of the special master.

### Discussion

For purposes of this discussion, we assume as true the following facts as alleged by petitioners.

Petitioners' son Hayden Goetz ("Hayden") was born on May 14, 1993, and received his first DPT vaccination on July 6, 1993. In the evening following the administration of the

vaccine, Hayden experienced a high fever, and the injection site became red and swollen. Petitioners called a pediatrician that night, and were told to administer Tylenol and Motrin to Hayden.

Hayden received a second DPT shot on August 31, 1993. Again his temperature elevated, and again the injection site became red and swollen. Later that night, Hayden awoke from his sleep with a high-pitched screaming. After 40 minutes, Hayden's mother ("Mrs. Goetz") called a pediatrician and was told to administer Tylenol and Motrin, but not to go to the emergency room unless the crying continued for three hours. Mrs. Goetz described Hayden's behavior in the days following the injection as listless and disinterested.

On November 19, 1993, Hayden received a third DPT injection. His fever rose to 101 degrees following the vaccination. Hayden's father testified that his son's general health started to decline after the third shot.

Hayden started to exhibit signs of developmental delay in the months and years following the vaccinations. However, petitioners assert that the first physician to suggest that Hayden's condition might be vaccine-related was Dr. Alan Lieberman, whom they visited in August 1997, four years after Hayden's first vaccination.

Hayden's parents filed their petition on March 12, 1999.

*Statute of Limitations*

The Vaccine Act provides that in its review of a special master's determination, this court may set aside "any findings of fact or conclusions of law found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 300aa–12(e)(2)(B). We review findings of fact under the "arbitrary and capricious" standard, and legal issues under the "not in accordance with law" standard. *Munn v. Secretary, HHS,* 970 F.2d 863, 870 n. 10 (Fed.Cir.1992).

We begin with the special master's finding that the court lacks jurisdiction because petitioners' claim was filed after the running of the statute of limitations. Application of the statute of limitations is a question of law, which we review *de novo.*

The limitations provision of the Vaccine Act, found in Section 300aa–16(a), states: "In the case of ... (2) a vaccine set forth in the Vaccine Injury Table which is administered after the effective date of this subpart, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury ...."

The petition in this case alleges that "Hayden suffered encephalopathy as defined by 42 U.S.C. § 300aa–14 or other brain damage caused by Hayden's reaction to the DPT shots administered in 1993." Encephalopathy as defined in the Vaccine Injury Table and its accompanying aids to interpretation is identified as "any significant acquired abnormality of, or injury to, or impairment of function of the brain," 42 U.S.C. § 300aa–14(b)(3)(A), the first sign or symptom of which is manifested within three days of the administration of a vaccine. § 300aa–14(a). The aids to interpretation list "high pitched and unusual screaming, [and] persistent inconsolable crying" among the signs and symptoms compatible with (but not necessarily conclusive of) the occurrence of an encephalopathy. § 300aa–14(b)(3)(A). Petitioners' detailed description of Hayden's immediate post-vaccination distress leaves no doubt that petitioners were aware that their child had suffered an "injury" following one or more of the vaccinations.

▮ For reasons outlined in *Brice v. Secretary, HHS,* 36 Fed.Cl. 474 (1996), it is clear that Congress intended the cause of action in a Vaccine Injury Table case to accrue upon occurrence of the first symptom of an injury, not upon the first identification of a link between the injury and the vaccination. Thus, the statute of limitations commences to run "upon the first symptom or manifestation of the onset of the injury and [is] not to be delayed until the time the petitioner has actual knowledge that the vaccine recipient

suffered an injury compensable under the Vaccine Act." *Id.* at 478.

As the special master stated, "Petitioners allege that Hayden's first symptoms occurred within hours of his first vaccination on July 6, 1993 . . . . In the alternative, Petitioners allege that Hayden suffered injuries after each of his three DPT vaccinations." *Goetz v. Secretary, HHS,* No. 99–127V, slip op. at 2 (Fed. Cl. Sp. Mstr. June 29, 1999). As the last vaccination occurred on November 19, 1993, the latest date for symptom onset—and hence the latest date for accrual of the cause of action—is November 19, 1993. The statute of limitations thus expired on November 19, 1996, 36 months after Hayden's last vaccination, and the petition must therefore be dismissed.

*Equitable Tolling*

Petitioners argue that the court should invoke the doctrine of equitable tolling to suspend the statute of limitations because physicians continuously failed to inform them of the possible link between Hayden's condition and his DPT shots.

The special master found that the facts did not merit an application of equitable tolling, specifically on the grounds that petitioners failed to exercise due diligence in pursuing a claim once they learned in 1997 of the possible link between the DPT vaccinations and Hayden's condition. We defer to the special master's factual finding regarding diligence. However, as we review the tolling issue *de novo,* we choose to frame the denial of equitable tolling in a different manner.

A statute of limitations for an action against the United States conditions the waiver of sovereign immunity that establishes the action. Equitable tolling suspends the running of a statute of limitations after a cause of action has accrued. While the Supreme Court has held that equitable tolling may apply in suits against the federal government, *see, e.g., United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), courts extend the doctrine sparingly. *Id.* at 96, 111 S.Ct. 453.

In a passage cited by petitioners, the Court stated:

> We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

*Irwin,* 498 U.S. at 96, 111 S.Ct. 453. Despite petitioners' assertions, *Irwin* does not support a claim for equitable tolling in this case. Petitioners never filed a pleading—defective or otherwise—during the statutory period, and the alleged misdiagnoses of the cause of Hayden's condition does not rise to the level of "adversary's misconduct."

Ignorance of one's rights is not enough to toll the statute of limitations. *Dion v. United States,* 137 Ct.Cl. 166, 167, 1956 WL 8304 (1956). Equitable tolling serves to extend the running of the statute of limitations in two situations: when a defendant conceals the facts supporting a claim, or where the cause of action is inherently unknowable. *See, e.g., Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, 359 (1967). Neither instance applies in this case. The government never obscured the facts relating to petitioners' claim, nor was petitioners' cause of action inherently unknowable.

To illustrate this concept of an "unknowable" action, we turn to the Federal Circuit's language in *Catawba Indian Tribe v. United States,* 982 F.2d 1564 (Fed.Cir.), *cert. denied,* 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993): "[A] traditional ground for equitable tolling of a statute of limitations is based on the avoidance of penalizing a plaintiff simply because under the circumstances plaintiff did not and could not have known of the *facts* upon which their claim is based." 982 F.2d at 1572.

The "fact" on which a Vaccine Injury Table claim is based is the occurrence of an event recognizable as a sign of a vaccine injury by the medical profession at large, not the diagnosis that actually confirms such an injury in a specific case. Under *Catawba,* therefore, equitable tolling could have applied to Hay-

den's case if petitioners could not have known Hayden suffered an encephalopathy. But that they do not claim. Instead their petition alleges that the "injuries sustained by Hayden were not identified by health care practitioners or the parents of Hayden as vaccine-related injuries until 1997."

Petitioners emphasize that before 1997 their efforts were persistently thwarted by incorrect information from doctors. While petitioners may well have diligently pursued an explanation for their son's disabilities before 1997, the symptoms that triggered the running of the statute were obvious when they occurred and were never hidden in such a way as to justify equitable tolling. Thus, there is no need to separate the case into pre–1997 and post–1997 time periods.

Hence, petitioners offer no compelling reason for a departure from previous decisions of this court holding that lack of knowledge of a connection between the injury and a vaccination is not a ground for tolling. *See, e.g., Melendez v. Secretary, HHS,* No. 94–103V (Fed.Cl. Jan. 6, 1995); *Childs v. Secretary, HHS,* 33 Fed.Cl. 556 (1995).

### Conclusion

For the reasons stated herein, the decision entered by the special master in this case is affirmed. Petitioners' claim is dismissed.