Joseph Tilghman **BRICE**, Laurajean Councill Brice, and Joseph Osler Brice, Petitioners,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 95–835V.

United States Court of Federal Claims.

Sept. 6, 1996.

---

Joseph Tilghman Brice, Laurajean Councill Brice, and Joseph Osler Brice, Pasadena, Maryland, pro se.

Robert T. Murphy, with whom were Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Gerard W. Fischer, Assistant Director, Washington, D.C., for respondent.

## OPINION

ANDEWELT, Judge.

### I.

In this vaccine action, petitioners, Joseph Tilghman Brice (Tilghman) and his parents, Laurajean Councill Brice and Joseph Osler Brice, seek compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to –34 (the Vaccine Act), for injuries Tilghman allegedly suffered as a result of a Measles, Mumps, and Rubella (MMR) vaccination administered on April 30, 1992. Petitioners contend that Tilghman suffers from a residual seizure disorder and brain damage which have impaired his speech and behavior patterns. On May 9, 1992, nine days after he received the MMR vaccination, Tilghman suffered seizures and was hospitalized. According to his parents, Tilghman's early development was generally within the normal range and it was not until September 1994, when Tilghman began preschool, that his parents became aware of the possibility of permanent injuries. In March 1995, Tilghman was diagnosed for the first time as suffering from a residual seizure disorder and brain damage. Thereafter, petitioners sought to secure an attorney to represent them in this court but after numerous unsuccessful attempts, ultimately filed the instant petition *pro se* on December 19, 1995, approximately nine months after the diagnosis of a residual seizure disorder and brain damage and approximately three years and seven months after Tilghman first suffered seizures on May 9, 1992. The special master assigned to review the petition dismissed the petition as barred by the statute of limitations set forth in Section 16(a)(2) of the Vaccine Act. This action is before the court on petitioners' motion for review of the special master's decision. For the reasons set forth below, this court remands this action for further consideration by the special master.

### II.

A petitioner can prove that a vaccine caused an injury for which compensation is available under the Vaccine Act in either of two ways. The petitioner can prove by a preponderance of the evidence that the vaccine in fact caused the injury, *i.e.*, causation-in-fact (Section 11(c)(1)(C)(ii)) or, in the alternative, can secure a presumption that the vaccine caused the injury by demonstrating that the vaccine recipient suffers from one of the injuries specified in the Vaccine Injury Table (Section 14(a)) and that "the first symptom or manifestation of the onset or of the significant aggravation of [the injury] occurred within the time period after vaccine administration set forth in the Vaccine Injury Table" (Section 11(c)(1)(C)(i)).

Although the instant petition is not absolutely clear, petitioners apparently argue that they can establish causation-in-fact and, alternatively, that they are entitled to a presumption under the Vaccine Injury Table. As to a presumption under the Vaccine Injury Table, petitioners allege that Tilghman suffers from two listed injuries, a residual seizure disorder and encephalopathy, and that Tilghman experienced the first symptom or manifestation of the onset of these injuries when he experienced seizures on May 9, 1992, which is within the 15–day post-MMR vaccine administration time period set forth in the Vaccine Injury Table.

### III.

The statute of limitations, which applies to the two alternative methods for demonstrating entitlement to compensation, is set forth in Section 16(a)(2) as follows:

In the case of—

a vaccine set forth in the Vaccine Injury Table which is administered after the effective date of this subpart, if a vaccine-

related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the [Vaccine Act] for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury[.]

In dismissing the petition as barred by the statute of limitations, the special master reasoned that the first symptom or manifestation of the onset of Tilghman's injuries occurred when Tilghman first experienced seizures on May 9, 1992, and that the petition, filed 43 months later, therefore was filed beyond the statutory 36–month period. Petitioners argued, in effect, that the 36–month statutory period should not run from May 9, 1992, because at that time, Tilghman's development was generally within normal ranges and petitioners reasonably could not have known that Tilghman suffered from encephalopathy or a residual seizure disorder until years later when Tilghman began to exhibit signs of abnormal behavior. The special master, citing an unpublished opinion in *Melendez v. Secretary, HHS,* No. 94–103V (Ct.Fed.Cl. Jan. 6, 1995), rejected this argument on the ground that the statute of limitations in the Vaccine Act begins to run upon the first symptom or manifestation of the onset of the injury and is not tolled until the time the petitioner discovers that the vaccine caused the injury.

Petitioners also argued that Tilghman suffered significant aggravation of his condition when he commenced school in September 1994 or when he was later diagnosed as suffering from a residual seizure disorder and brain damage. The special master rejected this contention on the ground that, as used in the Vaccine Act, "significant aggravation" refers to the aggravation of an injury that existed before the date of the vaccination in question and that petitioners, rather than contending that Tilghman suffered from a residual seizure disorder and encephalopathy prior to the MMR vaccination, allege that the MMR vaccine itself caused· Tilghman's injuries. The special master reasoned: "Without a condition before the vaccination,

the vaccination could not significantly aggravate anything."

### IV.

For the reasons set forth in *Childs v. Secretary, HHS,* 33 Fed.Cl. 556, 559 (1995), the special master is correct that "significant aggravation," as used in the Vaccine Act, refers to a condition that pre-dated the administration of the vaccine. *See also* 42 U.S.C. § 300aa–33(4) (defining "significant aggravation" as a "change for the worse in a preexisting condition"). Hence, where, as here, a petitioner alleges that a vaccine caused an injury and that later there was a significant aggravation of that same injury, the petitioner must file a petition within 36 months of the first symptom or manifestation of the onset of the injury and does not have the option to file within 36 months after the alleged significant aggravation.

### V.

More complex issues arise from the special master's handling of petitioners' argument that the statute of limitations should not run from May 9, 1992, because petitioners did not know, and reasonably could not have known, at that time that Tilghman suffered from encephalopathy or a residual seizure disorder. To evaluate petitioners' argument, the court must distinguish between two concepts involving the running of the statute of limitations: accrual and equitable tolling. Accrual describes the beginning of the running of the statute of limitations and the accrual date is the date on which the statute of limitations commences to run. Equitable tolling potentially comes into play after a claim accrues and potentially can prevent the expiration of a statute of limitations that has begun to run. *Catawba Indian Tribe v. United States,* 982 F.2d 1564, (Fed.Cir.), *cert. denied,* 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993). In *Catawba,* the Court of Appeals for the Federal Circuit explained: "Even if there is no express tolling provision applicable, courts may when circumstances require invoke the concept of tolling as an equitable matter." *Id.* at 1571.

*Catawba* involved a federal statute that was the result of successful negotiations among the Catawba Indian Tribe (the Tribe), the State of South Carolina, and the federal government. The Tribe had agreed to the terms included in the statute based on assurances from federal officials that the statute would not adversely affect the Tribe's claim to its ancestral lands. As ultimately interpreted by the Supreme Court and applied by the Court of Appeals for the Fourth Circuit, however, the statute had the effect of extinguishing the Tribe's rights to certain ancestral lands. Four years after the Supreme Court issued its decision interpreting the statute and 28 years after the statute's enactment, the Tribe brought suit against the United States in this court. The government moved to dismiss that suit as barred by the applicable six-year statute of limitations. The Tribe responded that, especially in view of the assurances by federal officials that the statute would not adversely affect the Tribe's ancestral lands, the Tribe did not know it had been injured until the Supreme Court interpreted the statute and that the suit should be deemed timely because it was brought within six years of that Supreme Court decision.

The *Catawba* court addressed both accrual and equitable tolling of the statute of limitations. The court appears to have categorized the argument that the Tribe did not know it had suffered any injury from enactment of the statute as relevant to the application of the doctrine of equitable tolling rather than accrual. As to accrual, the court explained: "It is hornbook law that a claim does not accrue until all events necessary to fix the liability of the defendant have occurred— when 'the plaintiff has a legal right to maintain his or her action.' " *Id.* at 1570 (quoting Calvin W. Corman, *Limitation of Actions* § 6.1, at 374 (1991)); *see also Nager Electric Co. v. United States,* 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966). The court, explaining that knowledge of injury was not a prerequisite for accrual, stated:

> While the Supreme Court's pronouncement in 1986 might be relevant to fixing the time when the Tribe *subjectively* first knew what the Act meant, it is fundamental jurisprudence that the Act's *objective* meaning and effect were fixed when the Act was adopted. Any later judicial pronouncements simply explain, but do not create, the operative effect.

982 F.2d at 1570 (emphasis in original). The court went on to take the position, however, that knowledge of injury was relevant to the issue of whether, after accrual, the statute of limitations should be equitably tolled. The court stated:

> As noted, a traditional ground for equitable tolling of a statute of limitations is based on the avoidance of penalizing a plaintiff simply because under the circumstances plaintiff did not and could not have known of the *facts* upon which the claim is based.

*Id.* at 1572 (emphasis in original) (citing Corman, *Limitation of Actions* § 11.1).

## VI.

■ Turning to the issue of accrual of the statute of limitations in Section 16(a)(2), the terms of the Vaccine Act demonstrate that Congress intended the limitations period to commence to run prior to the time a petitioner has actual knowledge that the vaccine recipient suffered from an injury that could result in a viable cause of action under the Vaccine Act. First, a particular symptom or manifestation, such as a seizure, often can result from a variety of different conditions. Hence, a petitioner typically will recognize that a particular symptom constitutes the first symptom or manifestation of the onset of a certain injury only with the benefit of hindsight, after a doctor makes a definitive diagnosis of the injury. By commencing the running of the limitations period on the date the first symptom or manifestation of the onset occurs, Congress chose to start the running of the statute before many petitioners would be able to identify, with reasonable certainty, the nature of the injury.

Sections 11(c)(1)(D) and 14(b)(2) provide further support for the conclusion that Congress intended the statute of limitations to commence to run prior to the time a petitioner has knowledge of the nature of the injury. Section 11(c)(1)(D)(i) provides that in order to obtain compensation under the Vaccine Act, a petition must contain an affidavit and

supporting documentation demonstrating that the person who suffered the injury "suffered the residual effects or complications of such ... injury ... for more than 6 months after the administration of the vaccine and incurred unreimbursable expenses due in whole or in part to such ... injury ... in an amount greater than $1,000." Because an injury compensable under the Vaccine Act does not arise until after the vaccine recipient has suffered the residual effects of the injury for at least six months, and because the first symptom or manifestation of the onset of such injury typically would occur prior to the individual having suffered the residual effects for six months, in enacting Section 11(c)(1)(D)(i), Congress necessarily understood that the statute of limitations would commence to run prior to the time a petitioner has knowledge that the individual suffered an injury compensable under the Vaccine Act.

The same conclusion flows from the definition of residual seizure disorder contained in Section 14(b)(2), which provides:

(2) A petitioner may be considered to have suffered a residual seizure disorder if the petitioner did not suffer a seizure or convulsion unaccompanied by fever or accompanied by a fever of less than 102 degrees Fahrenheit before the first seizure or convulsion after the administration of the vaccine involved and if—

(A) in the case of a measles, mumps, or rubella vaccine or any combination of such vaccines, the first seizure or convulsion occurred within 15 days after administration of the vaccine and 2 or more seizures or convulsions occurred within 1 year after the administration of the vaccine which were unaccompanied by fever or accompanied by a fever of less than 102 degrees Fahrenheit. . . .

Under this definition, a petitioner very possibly would not know that the vaccine recipient suffered from a qualifying residual seizure disorder until up to as much as one year after the occurrence of the first symptom or manifestation of the onset of that injury, i.e., the first seizure or convulsion. Yet, the wording of Section 16(a)(2) commences the running of the 36–month limitations period upon the occurrence of the first seizure.

For the above stated reasons, Congress intended the 36–month statute of limitations in Section 16(a)(2) to commence to run upon the first symptom or manifestation of the onset of the injury and not to be delayed until the time the petitioner has actual knowledge that the vaccine recipient suffered an injury compensable under the Vaccine Act. Because the statute of limitations commenced to run more than 36 months prior to petitioners filing the instant petition, the petition would be barred unless the running of the limitations period was tolled after it commenced to run.

## VII.

■ In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990), the Supreme Court concluded that there is a rebuttable presumption that equitable tolling applies in suits against the federal government. In *Catawba*, the Federal Circuit explained: "[A] traditional ground for equitable tolling of a statute of limitations is based on the avoidance of penalizing a plaintiff simply because under the circumstances plaintiff did not and could not have known of the *facts* upon which the claim is based." 982 F.2d at 1572 (emphasis in original). Herein, petitioners contend that until years after the first symptom or manifestation of the onset of Tilghman's injuries, they did not know, and reasonably could not have known, the crucial fact that Tilghman suffered from either a residual seizure disorder or encephalopathy. Hence, assuming petitioners can prove what they contend, by combining the reasoning in *Irwin* and *Catawba* a presumption arises that the statute of limitations in Section 16(a)(2) was equitably tolled for at least some period of time.

In applying *Irwin* and *Catawba*, the court must first assess whether there is anything in the Vaccine Act that rebuts the presumption that equitable tolling applies to petitions, such as the instant petition, that involve vaccines administered after the effective date of

the Vaccine Act.[1] The wording of Section 16(a)(2) appears to establish a definite date for expiration of the statute of limitations— "36 months after the occurrence of the first symptom or manifestation of onset." But courts have interpreted other statutes with an analogous level of definiteness as not inconsistent with the presumption that equitable tolling applies. For example, the statute of limitations in *Irwin* required filing "within thirty days of receipt of final action taken by the Equal Employment Opportunity Commission." Similarly, in *Catawba*, where the Federal Circuit reasoned that equitable tolling potentially could apply, the claim was filed more than six years after the claim accrued and the statute provided: "Every claim ... shall be barred unless the petition ... is filed within six years after the claim first accrues."[2] Hence, the wording of Section 16(a)(2) is not itself enough to rebut the presumption that equitable tolling applies.

The statutory wording that lends most support for the argument that Congress intended equitable tolling not to apply to post-Vaccine Act petitions is the wording of Section 16(a)(2), discussed above, which starts the running of the statute upon the first symptom or manifestation of the onset of the injury even though the petitioner reasonably would not have known at that time that the vaccine recipient suffered an injury compensable under the Vaccine Act. Arguably, if Congress considered knowledge of the injury to be significant when applying the statute,

Congress would not have commenced the running of the statute before the time a petitioner has such knowledge. But accrual and equitable tolling are distinct concepts and the fact that Congress did not intend accrual to be delayed until the time a petitioner has knowledge of the injury does not mean that Congress also intended equitable tolling not to apply. First, equitable tolling differs from accrual in that equitable tolling is an equitable doctrine. Hence, when Congress chooses not to negate the presumption that equitable tolling applies, Congress permits a delay in the running of the statute of limitations only in those situations where a court determines that the equities of the particular case demand such a delay. Courts have no similar flexibility when Congress delays accrual until a specified prerequisite occurs.

Second, delaying accrual pending the occurrence of a certain event and allowing equitable tolling pending the occurrence of that same event have different ramifications with respect to the required timing for the filing of a petition. For example, if accrual is delayed until the time a petitioner has knowledge of the injury, then the petitioner is allowed the full statutory period after he or she acquires the knowledge to file suit. On the other hand, if accrual starts upon the first symptom or manifestation of the onset and the petitioner's lack of knowledge of the injury results in equitable tolling that lasts

---

1. Injuries resulting from vaccines administered *before* the effective date of the Vaccine Act are covered in Section 16(a)(1) which requires that a petition be filed within 28 months after October 1, 1988, *i.e.*, by February 1, 1991. In *Smith v. Secretary, HHS*, 26 Cl.Ct. 116, 119, *aff'd*, 983 F.2d 1088 (Fed.Cir.1992), the court concluded that equitable tolling does not apply to Section 16(a)(1) because February 1, 1991, was intended to serve as a cutoff date for all covered petitions. *See also Iacono v. Office of Personnel Management*, 974 F.2d 1326 (Fed.Cir.1992) (the Spouse Equity Act is not subject to equitable tolling because it required all claims to be filed by May 7, 1989, which therefore served as a cutoff date). There is no similar single cutoff date for post-Vaccine Act petitions and hence, the reasoning of *Smith* would not apply when interpreting Section 16(a)(2).

2. In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115

L.Ed.2d 321 (1991), the Supreme Court held that equitable tolling does not apply to the statute there under consideration, but the Court's analysis therein does not aid defendant here. In *Gilbertson*, the statute sets forth two limitations—an action must be filed within one year of discovery of the facts constituting the violation and within three years after such violation. The Court held that equitable tolling is "fundamentally inconsistent" with the one- and three-year structure. The one-year period indicates that Congress considered and addressed delays in a plaintiff discovering the facts that underlie the violation and the Court interpreted the three-year period as serving only to impose an "outside limit" on that discovery. In the instant case, unlike in *Gilbertson*, there is only one statutory period and that period, as defined in the statute, is more closely analogous to the periods in *Irwin* and *Catawba* and other statutes where equitable tolling is available.

beyond the expiration of the time period set forth in the statute of limitations, then the petitioner, upon acquiring the requisite knowledge, is required to proceed with due diligence to file a petition. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452–53 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

Thus, for the reasons stated above, the statutory language of the Vaccine Act supports the conclusion that Congress did not intend to negate the presumption that equitable tolling applies to the limitations period set forth in Section 16(a)(2).

## VIII.

Perhaps the most compelling reason to conclude that Congress intended equitable tolling to apply to Section 16(a)(2) is that equitable tolling is fully consistent with the goals Congress intended the Vaccine Act to achieve. Prior to enactment of the Vaccine Act, individuals sought compensation for vaccine-related injuries primarily through civil tort damage actions against vaccine manufacturers and administrators. Congress became concerned, however, that these civil actions were deterring the manufacture, development, and use of vaccines and, in addition, that the civil tort system did not efficiently and effectively address the needs of injured vaccine recipients. In an effort to address these concerns, Congress enacted the Vaccine Act as a potential alternative system for seeking compensation for vaccine-related injuries. Congress intended the Vaccine Act not only to diminish the number of civil damage actions but also to create a

"compensation program under which awards can be made to vaccine-injured persons quickly, easily, and with certainty and generosity." H.R.Rep. No. 908, 99th Cong., 2d Sess. 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6344.[3]

The Vaccine Act diminishes civil damage litigation by offering an alternative to seeking compensation for vaccine-related injuries through civil tort actions and by ordinarily precluding an injured person from filing a civil tort action before first pursuing compensation under the Vaccine Act. Sections 11(a)(2)(A) and 21 preclude persons from filing civil damage actions seeking in excess of $1,000 for injuries resulting from vaccines administered after the effective date of the Vaccine Act, except in those situations where this court fails to act on a petition within the time specified in Section 12 or the individual secures a judgment under the Vaccine Act and determines not to accept that judgment. With respect to Congress' intent to offer vaccine-injured persons a simpler, more efficient, and generous compensation system, the Vaccine Act, *inter alia*, creates a presumption of entitlement to compensation based on the showing of a limited set of facts under the Vaccine Injury Table. This presumption not only can lower legal costs but also potentially can make compensation available in those situations where an injured party may not be able to make a showing of causation necessary to prevail in a civil tort action.

Interpreting Section 16(a)(2) as allowing the expiration of the statute of limitations before a petitioner reasonably would have

---

**3.** As to the effect civil damage actions were having on vaccine manufacture, development, and use, the House Report accompanying the Vaccine Act bill states:

> At least in part as a result of this increase in litigation, the prices of vaccines have jumped enormously. The number of childhood vaccine manufacturers has declined significantly. In certain areas, the level of immunization against some preventable diseases has decreased while the incidence of those diseases has increased.

H.R.Rep. No. 908 at 4, *reprinted in* 1986 U.S.C.C.A.N. at 6345. As to the deficiencies in the civil tort system for securing compensation for vaccine-related injuries, the House Report continues:

> But for the relatively few who are injured by vaccines—through no fault of their own—the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered. Currently, vaccine-injured persons can seek recovery for their damages only through the civil tort system or through a settlement arrangement with the vaccine manufacturer. Over time, neither approach has proven satisfactory. Lawsuits and settlement negotiations can take months and even years to complete. Transaction costs—including attorneys' fees and court payments—are high. And in the end, no recovery may be available. Yet futures have been destroyed and mounting expenses must be met.

*Id.* at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6347.

known of the vaccine-related injury would undermine these interrelated goals of diminishing civil tort actions and creating an efficient and generous alternative compensation system for vaccine-related injuries. Statutes of limitations generally do not expire for civil tort damage actions before an injured person discovers his or her injury. *Cada,* 920 F.2d at 450. Hence, if an individual who discovers a vaccine-related injury after a significant delay would be barred from proceeding under the Vaccine Act but not from proceeding with a civil tort damage action, the result would be not only to render the new, quick, easy, and generous compensation scheme unavailable to certain persons injured by vaccines, but also to encourage the resort to civil tort actions which is completely inconsistent with Congress' intent of creating an alternative compensation scheme to discourage civil tort actions.

An argument can be made that the appropriate interpretation of Section 16(a)(2) is that an individual also would be barred from bringing a civil tort action if he or she failed to file a timely petition under Section 16(a)(2).[4] Even this interpretation, however, points in favor of the availability of equitable tolling. Assuming the filing of a petition beyond the statutory time period set forth in Section 16(a)(2) has the effect of precluding the filing of a civil tort action and assuming also that equitable tolling is available in civil tort actions but not under Section 16(a)(2), the net effect of the Vaccine Act would be to bar an injured person from bringing a civil tort action that the person could have brought prior to the adoption of the Vaccine Act. But precluding the only remedy available to an injured person who reasonably did not know of his or her injury until more than 36 months after the first symptom or manifestation of the onset would hardly seem

consistent with Congress' effort to create a "generous" compensation scheme. Moreover, the legislative history of the Vaccine Act supports the contrary conclusion that Congress intended to create an *alternative* compensation scheme and not to eliminate the option of an injured person to bring a civil tort action. The pertinent House Report, *inter alia,* indicates that Congress intended an individual who elects to reject a judgment under the Vaccine Act to have the option of filing "a civil action for damages relating to a vaccine injury *just as he or she may have done prior to the enactment of the legislation.*" H.R.Rep. No. 908 at 3, *reprinted in* 1986 U.S.C.C.A.N. at 6344 (emphasis added).

Hence, for the above reasons, the wording of the Vaccine Act and its legislative history support an interpretation of Section 16(a)(2) that would allow the court, when equity so demands, to toll the running of the statute of limitations where a petitioner did not know, and reasonably could not have known, that the vaccine recipient had suffered an injury compensable under the Vaccine Act.[5]

### Conclusion

For the reasons set forth above, the court concludes that Congress intended the 36–month statutory period in Section 16(a)(2) to commence to run upon the first symptom or manifestation of the onset of the injury and that Congress did not intend to negate the presumption that equitable tolling applies to this limitations period. Because the special master did not interpret Section 16(a)(2) as subject to equitable tolling and hence did not make the subsidiary factual findings necessary to determine whether equitable tolling should apply and, if so, whether the resulting

---

4. Section 11(a)(2)(A) precludes civil actions for damages over $1,000 "unless a petition has been filed, in accordance with section 300aa–16 of this title, for compensation under [the Vaccine Act]." To the extent a petition filed outside the 36–month statutory period is not "in accordance" with Section 16, that untimely petition would bar an otherwise timely civil damage suit.

5. The unpublished *Melendez* decision upon which the special master relied does not demand a different result. Consistent with this court's ap-

proach, the *Melendez* court concluded that accrual occurred notwithstanding an alleged lack of knowledge by the petitioner that her daughter had suffered an injury compensable under the Vaccine Act. The court, however, did not conclude that such lack of knowledge was irrelevant to equitable tolling. To the contrary, the court accepted the special master's finding that the facts did not support equitable tolling because the petitioner was on notice of the injury within the limitations period.

toll is sufficient to render the instant petition timely filed, this court will remand this action to the special master for consideration of these issues. On or before December 5, 1996, the special master shall file a response to this opinion.

IT IS SO ORDERED.