Joseph Tilghman **BRICE,** Laurajean Councill Brice, and Joseph Osler Brice, Petitioners,

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 95–835V.

United States Court of Federal Claims.

Aug. 11, 1999.

Joseph Tilghman Brice, Laurajean Councill Brice, and Joseph Osler Brice, Pasadena, Maryland, pro se.

Mark W. Rogers, with whom were Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Gerard W. Fischer, Assistant Director, Washington, D.C., for respondent.

*OPINION*

ANDEWELT, Judge.

I.

In this vaccine action, petitioners, Joseph Tilghman Brice (Tilghman) and his parents, Laurajean Councill Brice (Dr. Councill) and Joseph Osler Brice (Dr. Brice), seek compensation under the National Childhood Vaccine Injury Act of 1986 (the Vaccine Act), 42 U.S.C. §§ 300aa–1 *et seq.* (1994), for injuries Tilghman allegedly suffered as a result of a Measles, Mumps, and Rubella (MMR) vaccination administered on April 30, 1992. In a March 27, 1996, order, the special master assigned to review the petition dismissed the petition as barred by the statute of limitations set forth in Section 16(a)(2) of the Vaccine Act, 42 U.S.C. § 300aa–16(a)(2). Thereafter, petitioners filed in this court a motion for review of the special master's decision. Upon review, this court determined that equitable tolling applies to Section 16(a)(2) of the Vaccine Act and remanded the petition to

the special master to "make subsidiary factual findings necessary to determine whether equitable tolling should apply and, if so, whether the resulting toll is sufficient to render the instant petition timely filed." *Brice v. Secretary, HHS*, 36 Fed.Cl. 474, 481–82 (1996).

After conducting a factual hearing, the special master issued a decision on remand in which she summarized certain facts revealed during the hearing and then concluded that petitioners had failed to demonstrate that equitable tolling applied so as to render the petition timely filed. The special master found that the first manifestation of Tilghman's injury occurred on May 9, 1992, and that absent any tolling, the 36–month limitations period set forth in Section 16(a)(2)[1] expired on May 9, 1995, over seven months before petitioners filed their petition on December 19, 1995. The special master based her conclusion that equitable tolling did not apply to petitioners' case on two independent grounds. First, the special master concluded that equitable tolling was not available because petitioners, in effect, reasonably recognized the causal relationship between MMR vaccination and Tilghman's injuries long before the 36–month statutory period expired, but failed to proceed in due course to file a petition. The special master explained:

> Petitioners were under a duty to seek legal counsel before the running of the statute of limitations. In a family where the parents have medical training, where a relative is a lawyer, where the mother recognizes from the beginning that her child is having an MMR reaction, and the child becomes vastly different (losing milestones, just sitting vacantly) after the MMR for a number of months, it begs credulity to imagine that any tolling of the statute of limitations in this case would be equitable.

---

1. Section 16(a) of the Vaccine Act provides:
   In the case of—
   \* \* \*
   (2) a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no

petition may be filed for compensation under the [Vaccine Act] for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury . . . .
42 U.S.C. § 300aa–16(a) (1994).

*Brice v. Secretary, HHS,* 1996 WL 718287, at *5 (1996). The special master concluded that tolling would not be available even if petitioners were unaware of the availability of a suit under the Vaccine Act because "ignorance of one's legal rights does not toll the statute of limitations." *Id.* at *4 (citing *Dion v. United States,* 137 Ct.Cl. 166, 167 (1956)).

Second, the special master alternatively rejected equitable tolling based on her finding that "a neurologist, Dr. Eileen Vining, expressly told Dr. Councill on March 30, 1995 (still five weeks before the statute of limitations expired) to bring an action under the Vaccine Act." *Id.* On that date, Dr. Vining also diagnosed Tilghman as having suffered a residual seizure disorder as a result of an adverse reaction to the MMR vaccination.

In a February 13, 1998, order, this court remanded this action to the special master for a second time and directed the special master to make "factual findings concerning whether, assuming petitioners reasonably could not have known about [Tilghman's] injuries until March 30, 1995, petitioners had acted with due diligence from the time they became aware of the injuries until they filed their petition." *Brice v. Secretary, HHS,* No. 95–835V (Fed.Cl. Feb. 13, 1998) (order remanding action). In her second decision on remand, the special master concluded:

> The visit with Dr. Vining was an unmistakable direction to seek legal redress. There were still five weeks remaining for petitioners to file a petition in a timely fashion, ample time within which to do so. Yet, petitioners waited eight and one-half months after their visit with Dr. Vining to assert their legal rights. They did not even pursue obtaining their medical records until two and one-half months after visiting Dr. Vining. Moreover, they did not obtain the University of Maryland discharge summary which stated, *inter alia,* MMR reaction until September or October, six or seven months after the visit to Dr. Vining. There is no diligence in this case, much less due diligence.

*Brice v. Secretary, HHS,* 1998 WL 136562, at 2 (Fed.Cl. Mar. 12, 1998). This action is now before the court on petitioners' motions for review of the special master's first and second decisions on remand.

## II.

"Even if there is no express tolling provision [in a statute] applicable, courts may when circumstances require invoke the concept of tolling as an equitable matter." *Catawba Indian Tribe of S.C. v. United States,* 982 F.2d 1564, 1571 (Fed.Cir.1993). "[A] traditional ground for equitable tolling of a statute of limitations is based on the avoidance of penalizing a plaintiff simply because under the circumstances plaintiff did not and could not have known of the facts upon which the claim is based." *Id.* at 1572; *see also Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452 (7th Cir.1990) ("For equitable tolling all [plaintiff] need show is that he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim."). Where equitable tolling is invoked to suspend the statute of limitations, the plaintiff "must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information." *Cada,* 920 F.2d at 453. "When ... the necessary information is gathered after the claim arose but before the statute of limitations has run, [there is a rebuttable] presumption ... that the plaintiff could bring suit within the statutory period and should have done so." *Id.*

## III.

### A.

To evaluate the special master's first ground for not invoking equitable tolling, it is necessary to review the pertinent ways a petitioner can secure compensation under the Vaccine Act. A petitioner can prove entitlement by demonstrating that a vaccine covered under the Vaccine Act in fact caused the stated injury. *See* 42 U.S.C. § 300aa–11(c)(1)(C) (1994); *see also Hines v. Secretary, HHS,* 940 F.2d 1518, 1524–25 (Fed.Cir. 1991). Alternatively, a petitioner can resort to the injuries listed in the Vaccine Injury Table under 42 U.S.C. § 300aa–14 (1994). *See id.* Causation is presumed for an injury listed in the Vaccine Injury Table if the injury "begins to manifest itself within the

time specified in the Table for the vaccine in question." *Hines*, 940 F.2d at 1524. The special master based her first ground for denial of equitable tolling on petitioners having observed a correlation between the timing of the MMR vaccination and Tilghman's delay in development. But to say that petitioners suspected the MMR vaccination caused Tilghman's delay in development is not to say that petitioners were aware of the relevant facts underlying the instant petition for compensation. Petitioners do not base the instant petition on their ability to prove causation in fact. Instead, petitioners base their petition on the presumption that the MMR vaccination caused Tilghman's residual seizure disorder and brain damage because these injuries are listed in the Vaccine Injury Table and the first manifestation of these injuries occurred within 15 days of the vaccination. *See* 42 U.S.C. § 300aa–14 (1994). If the court were to focus narrowly on the particular Table injuries on which petitioners base their claim for compensation, then petitioners arguably did not know of the relevant facts underlying their claim until March 30, 1995, when Tilghman was first diagnosed by a medical doctor as having suffered a residual seizure disorder as a result of an adverse reaction to the MMR vaccination.[2]

### B.

In any event, to affirm the special master's decision, the court need not agree with the special master as to when petitioners became aware of the relevant facts underlying their petition because the special master acted within her discretion when she concluded that petitioners did not act within a reasonable time after they became aware of those facts. As noted above, there is a presumption that petitioners could bring suit within the statutory period if they discovered the facts underlying their claim before the statute of limitations expired. *See Cada*, 920 F.2d at 453. Even if petitioners could over-

come this presumption and demonstrate that the special master erred in concluding that petitioners reasonably could have filed the instant petition during the five weeks between their consultation with Dr. Vining and the end of the statutory filing period, the petition still must fail because the court simply cannot conclude that the special master acted irrationally in finding that petitioners did not act diligently when they "waited eight and one-half months after their visit with Dr. Vining to assert their legal rights." *Brice*, 1998 WL 136562, at *2 (Fed.Cl. Mar. 12, 1998).

Petitioners contend that they acted with due diligence during the eight and one-half months between their meeting with Dr. Vining and the filing of the petition, "[e]specially when you consider the facts that both Dr. Brice and Dr. Councill [were] working a full time schedule, plus additional full time hours in pharmacy for Dr. Councill and the fact that Dr. Councill . . . was incapacitated for a full two months during [this period due to surgery]." Petitioners contend that the day after Dr. Vining diagnosed Tilghman's residual seizure disorder, petitioners contacted the Public Health Service and requested information on filing a petition under the Vaccine Act, but did not receive an information packet until two months later. After receiving the information packet in mid-June 1995, petitioners contend that they spent the next month searching in vain for an appropriate attorney and the next four months trying unsuccessfully to secure a complete set of Tilghman's medical records to file along with their petition.

As to the information packet, even if petitioners' allegation that the Public Health Service's two-month delay in responding to petitioners' request for information was sufficient to toll the statute of limitations for a two-month period, petitioners still waited six months after receiving that information to

---

**2.** Dr. Larry Blum, a neurologist who reviewed Tilghman's case beginning in late 1994, referred to Tilghman's history of encephalopathy, a condition listed in the Vaccine Injury Table, following an MMR vaccination. This reference in Dr. Blum's medical records, however, merely reflects petitioners' recitation of Tilghman's medical history and does not suggest a diagnosis of ence-

phalopathy or a residual seizure disorder. In fact, in a November 22, 1994, letter to Tilghman's pediatrician, Dr. Blum stated: "I do not think that [Tilghman] has evidence that is convincing, in my opinion, of a seizure disorder . . . ." Moreover, Dr. Blum diagnosed Tilghman with "pediatric migraines" and a "sleep disorder or arousal problem."

file their claim. As to their search for an attorney during this six-month period, petitioners claim that they were unable to locate an appropriate attorney to represent them. Two of the attorneys petitioners consulted were willing to represent petitioners, but petitioners declined their services because they had reservations about the cost and the attorneys' commitment to their case. Hence, at least two attorneys were available to represent petitioners but petitioners voluntarily chose to decline their services and proceed instead without the advice of counsel. Moreover, two attorneys expressed concern about the expiration of the statute of limitations period on petitioners' claim. In fact, in early July 1995, one attorney advised petitioners to proceed *pro se.* Thus, despite an unambiguous notification of a possible impending expiration of the limitations period and clear advise that petitioners should pursue their claim without counsel if an attorney were not then available, petitioners delayed an additional five months before filing their petition.

Petitioners also point to their efforts to assemble a complete set of Tilghman's medical records before they filed their petition. Petitioners assert that although they first requested Tilghman's medical records on June 19, 1995, four days after receiving the information packet from the Public Health Service, they did not receive Tilghman's records from the University of Maryland Medical Center until October 1995 and still had not obtained the records from Dr. Marc Rawitt, Tilghman's pediatrician, when they filed their petition in December 1995. Petitioners assert that it was reasonable for them to delay filing their petition until December 1995 because during this delay, petitioners were attempting to collect a complete set of Tilghman's medical records in an effort to comply with the requirements for filing a petition set forth in the Vaccine Guidelines. Petitioners contend that they could not control the delay in receiving the University of Maryland Medical Center records because "[t]he records had been taken off site, microfilmed, and shipped to Texas [where they were] misfiled in a warehouse." Additional-

ly, petitioners claim that despite their diligent efforts to obtain Dr. Rawitt's medical records on Tilghman, Dr. Rawitt refused to turn them over, and petitioners ultimately had to rely upon a summary of Dr. Rawitt's records that they had obtained sometime before October 1995.[3] Petitioners claim that they "anguished over ... [t]he completeness of the the[ir] petition, and whether the Clerk would file the case because of the lack of the pediatrician's complete medical records." They finally filed their petition without Dr. Rawitt's records on December 19, 1995, "[o]ut of desperation."

Petitioners misunderstand the filing requirements of the Vaccine Act. Both the Vaccine Act and the Vaccine Guidelines allow a petitioner to file a petition without certain medical documents as long as the petitioner includes an explanation of the unavailability of the missing documents. The Vaccine Act provides that "[a] petition for compensation under the [Vaccine Act] for a vaccine-related injury or death shall contain—... (3) an identification of any records of the type described in paragraphs (1) or (2) which are unavailable to the petitioner and the reasons for their unavailability." 42 U.S.C. § 300aa–11(c)(3) (1994). Similarly, the Vaccine Guidelines state that "[i]f after diligent efforts, required records are not obtainable, their absence shall be explained *by affidavit.*" The Office of the Special Masters, United States Court of Federal Claims, *Guidelines for Practice Under the National Vaccine Injury Compensation Program,* at 10 (1996).

Hence, if petitioners desired to file a petition compliant with the rules as expeditiously as reasonably possible, they could have filed their petition in June or July 1995 along with the medical records they had obtained up to that point and an affidavit explaining that despite their diligent efforts, the remaining documents were "unavailable" to petitioners at that time because they had been misfiled and/or Tilghman's pediatrician refused to release them. To the extent petitioners had questions about the requirements for filing medical documents or any other matters,

---

3. Dr. Rawitt refused to release any medical records to anyone other than a doctor, so petitioners asked Dr. C. Thomas Folkermer to request Dr. Rawitt's records for them. Through Dr. Folkermer, petitioners obtained only a summary of Dr. Rawitt's records.

they could have hired counsel or simply asked the Clerk of the Court for additional information on filing their claim. Although petitioners contacted the Clerk to discuss preliminary matters, nothing in the record indicates that petitioners sought clarification from the Clerk or any other individual of any perceived ambiguity in the filing requirements under the Vaccine Act.

### IV.

In evaluating the above facts and the special master's conclusion that petitioners did not establish due diligence, the court's focus is necessarily narrow. Section 12(e) of the Vaccine Act permits this court to set aside the special master's findings of fact or conclusions of law only if the court finds the special master's actions "to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B) (1994). This arbitrary and capricious standard for review of findings by the special master is "well understood to be the most deferential possible." *Munn v. Secretary of Dep't of HHS,* 970 F.2d 863, 870 (Fed.Cir.1992); *see also Hines,* 940 F.2d at 1528; *Hyundai Elecs. Inds. Co., Ltd. v. United States Int'l Trade Comm'n,* 899 F.2d 1204, 1209 (Fed.Cir.1990). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines,* 940 F.2d at 1528.

In applying this standard, the court recognizes that although the statute of limitations can appear to work harshly when viewed from the perspective of an individual petitioner, it serves an important function. "Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada,* 920 F.2d at 452–53. For each day the running of the statute of limitations is delayed, the risk of undermining the purposes of the statute becomes greater. Hence, when a court is confronted with a claim of equitable tolling and due diligence in

filing, it is appropriate to evaluate the claims with rigor and thereby assure that the policies underlying the statute of limitations are not unreasonably sacrificed. Here, the special master considered petitioners' arguments and articulated a rational basis for her decision that petitioners failed to act with due diligence. This court may demand no more and must affirm the special master's decision.

### *Conclusion*

For the reasons set forth above, this court affirms the special master's decision to dismiss the instant petition. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.