**Joseph Tilghman BRICE, Laurajean Councill Brice, and Joseph Osler Brice, Petitioners,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 95–835V.

United States Court of Federal Claims.

Feb. 6, 2003.

---

Peter H. Meyers, George Washington University Law School, Jacob Burns Community Legal Clinics, for the petitioners.

Mark W. Rogers, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, with whom on the brief were, Robert D. McCallum, Jr., Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, for the respondent.

## OPINION

MARGOLIS, Senior Judge.

This case is before the Court on petitioners' motion for review of the special master's August 9, 2002, decision denying their application for attorneys' fees and costs arising from a petition for vaccine compensation brought on behalf of their son under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. § 300aa–1 *et seq.* This matter has been briefed by the parties and oral argument was heard on January 6, 2003. After full consideration by the Court, the special master's decision is AFFIRMED.

## FACTS

Joseph Tilghman Brice ("Tilghman"), son of Joseph Osler Brice and Laurajean Councill Brice, was born on January 31, 1991. On April 30, 1992, Tilghman received a measles-mumps-rubella ("MMR") vaccination. Nine

days later, on May 9, 1992, Tilghman had a seizure, which the Brices claim was the first manifestation of an injury caused by the administration of the MMR vaccine. After the seizure, he started to slip behind his peers with regard to meeting developmental milestones. On March 30, 1995, a neurologist diagnosed Tilghman with a residual seizure disorder. The Brices thereafter began researching the possibility of filing a petition for compensation pursuant to the Vaccine Act.

Joseph Osler Brice and Laurajean Councill Brice, acting *pro se* on behalf of their son, filed a petition for compensation pursuant to the Vaccine Act on December 19, 1995. As the petition was filed seven months after the 36–month statute of limitations, Special Master Laura D. Millman dismissed it pursuant to section 300aa–16(a)(2) of the Vaccine Act.[1] *See Brice v. HHS*, 36 Fed.Cl. 474, 475 (1996). The Brices appealed that decision. *Id.* On appeal, Judge Roger Andewelt, of this Court, held that equitable tolling is generally available with regard to the Vaccine Act's statute of limitations. *Id.* at 481–82. Judge Andewelt, therefore, reversed and remanded the case to the special master for her to determine whether equitable tolling should apply in this case, and, if so, whether it would be sufficient to render the petition timely. *Id.* As a result, Special Master Millman conducted an extensive evidentiary hearing to determine whether petitioners had exercised the due diligence required to invoke equitable tolling. She again dismissed the petition for being untimely, and again the Brices appealed that decision. *Brice v. HHS*, No. 95–835V, 1996 WL 718287 (Fed.Cl. Nov.26, 1996). Judge Andewelt remanded the decision for even further fact-finding, and Special Master Millman once again dismissed the petition for untimeliness, this time specifying that there was "no diligence in this case, much less due diligence." *Brice v. HHS*, No. 95–835V, 1998 WL 136562, at \*2 (Fed.Cl. Mar.12, 1998). The Brices appealed, and

---

1.  42 U.S.C. § 300aa–16(a)(2) states that:
    [A] vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury....

Judge Andewelt affirmed that decision. *Brice v. HHS*, 44 Fed.Cl. 673 (1999).

The Brices, still acting *pro se* on behalf of their minor son, appealed the dismissal to the U.S. Court of Appeals for the Federal Circuit. The clerk of the Federal Circuit notified the Brices on August 26, 1999 that they could not represent their son, and that, "in order for [Tilghman's] appeal to proceed, he must be represented by counsel." Pls.' Mot. for Rev. of Dec. Den. Att'ys' Fees and Costs App. A. The Brices thereafter retained Professor Peter H. Meyers and his students in the Vaccine Injury Clinic at the George Washington University School of Law, who have represented the Brices in all subsequent proceedings, including the present motion.

After the Brices had retained counsel, the Federal Circuit was able to review the decisions of both the special master and the U.S. Court of Federal Claims that the case be dismissed because the petition had been filed after the statute of limitations, and that equitable tolling was not available in this instance because the plaintiffs lacked due diligence. The Federal Circuit did not reach the issue of whether the determination that the Brices lacked due diligence was arbitrary and capricious, holding instead that such a determination was irrelevant as equitable tolling is never available for claims arising under section 16(a)(2) of the Vaccine Injury Act. *Brice v. HHS*, 240 F.3d 1367, 1367–68 (Fed.Cir. 2001). The Court determined that equitable tolling should never be allowed in such cases because "it invites prolonged and wasteful collateral litigation concerning the running of the statute of limitations," citing this case as a "quintessential example." *Id.* at 1373. The dismissal of the petition was thus affirmed. *Id.* at 1374. The Brices then filed a petition for rehearing *en banc*, which was denied. *Id.* Finally, the Brices petitioned for writ of certiorari to the Supreme Court. *Brice v. HHS*, 534 U.S. 1040, 122 S.Ct. 614, 151 L.Ed.2d 538 (2001). The Supreme Court denied certiorari on November 26, 2001, thus concluding almost six years of litigation on the issue of whether the original petition was untimely filed. *Id.*

On May 17, 2002, the Brices applied for attorneys' fees and costs. *Brice v. HHS*, No. 95–835V, 2002 WL 31051640 (Fed.Cl. Aug. 9, 2002). Special Master Millman denied the application because she lacked jurisdiction to award fees in this case. *Id.* at *3. She held that the dismissal of the original petition was based on a lack of jurisdiction, and, as she did not have jurisdiction over the original petition, she also lacked jurisdiction over the application for attorneys' fees regarding that petition. *Id.* The Brices have appealed that decision to this Court, arguing that (1) the special master had jurisdiction to award attorneys' fees, and (2) any general rule that might prohibit such fees should be subject to a necessity exception.

## DISCUSSION

1. *The Special Master lacks jurisdiction to award attorneys' fees where a Vaccine Act petitioner files after the deadline set forth in the applicable statute of limitations.*

Section 16(a)(2) of the Vaccine Act states that, in this type of case, "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury...." 42 U.S.C. § 300aa–16(a)(2). The Brices did not file their petition until after that deadline, as it applied to their case, had passed. The petition was dismissed due to that untimeliness. *Brice v. HHS*, 1996 WL 718287, *aff'd*, 44 Fed.Cl. 673, *aff'd*, 240 F.3d 1367, *cert. denied*, 534 U.S. 1040, 122 S.Ct. 614, 151 L.Ed.2d 538. In denying the application for attorneys' fees, the special master ruled that where a petitioner failed to file within the statute of limitations outlined in section 16(a)(2), the Court lacked jurisdiction over the case; the Brices contend that her conclusion was misguided.

The petitioners argue that the Court had jurisdiction over the petition, and that it should have dismissed the case for failure to state a claim for which relief could be granted. The Brices maintain that, if it had been dismissed for failure to state a claim, the Court would have jurisdiction to award attor-

neys' fees, and they would be entitled to such fees. Therefore, this Court will first determine whether the petition was properly dismissed for lack of subject matter jurisdiction. The determination of whether the special master has subject matter jurisdiction is a question of law. *Martin v. HHS*, 62 F.3d 1403, 1405 (Fed.Cir.1995). As such, this Court reviews the issue *de novo. Id.*

The Vaccine Act permits individuals to sue the Government to collect money under certain circumstances, in essence acting as the Government's waiver of sovereign immunity with regard to those circumstances specified in the statute. *Brice v. HHS*, 240 F.3d at 1370. It is well settled that when the Government statutorily waives sovereign immunity, that waiver should be strictly construed. *Id.* (explaining that "courts should be careful not to interpret [a waiver] in a manner that would extend the waiver beyond that which Congress intended" (internal quotations omitted)); *see also Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). The Supreme Court has unambiguously stated that "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied. When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block*, 461 U.S. at 287, 103 S.Ct. 1811 (internal citations omitted). In section 16(a)(2) of the Vaccine Act, Congress specifically limited the Vaccine Act's waiver of sovereign immunity to cases that were filed before a certain deadline. 42 U.S.C. § 300aa–16(a)(2). The deadline is, as the Federal Circuit has pointed out in previous incarnations of this case, "a condition on the waiver of sovereign immunity by the United States." *Brice v. HHS*, 240 F.3d at 1370. Thus, this Court may not infer that Congress waived sovereign immunity for claims filed past that deadline. Congress specifically reserved sovereign immunity in such an instance.

■ The Federal Circuit has repeatedly held that this Court lacks jurisdiction to hear cases which are brought against the United States after the expiration of the applicable statute of limitations. *Caguas Cent. Fed. Sav. Bank v. U.S.*, 215 F.3d 1304, 1310 (Fed.Cir. 2000), *cert. denied*, 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001) (holding that "[i]n the Court of Federal Claims, the statute of limitations is jurisdictional" because filing within that period is "a condition of the waiver of sovereign immunity"); *Brown Park Estates—Fairfield Dev. Co. v. U.S.*, 127 F.3d 1449, 1454 (Fed.Cir.1997). The Brices cite *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687 (Fed.Cir.1992), to support their argument that the untimeliness was not a matter of jurisdiction, but of failure to state a claim. Although the Court of Federal Claims, in *S. Cal. Fed. Sav. & Loan v. U.S.*, 52 Fed.Cl. 444, 454 (2002), interpreted *Spruill* to hold that "a time bar defense 'was not a matter of jurisdiction,'" the Federal Circuit stated clearly several months after that decision that a "statute of limitations is a jurisdictional requirement provided by Congress." *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed.Cir.2002). This Court must, therefore, treat the dismissal of the Brices' petition as a determination that the Court lacked subject matter jurisdiction over the petition itself.

■ The next issue that the Court will address is whether the special master had independent jurisdiction to award attorneys' fees under the Vaccine Act even though it lacked subject matter jurisdiction over the petition. In *Martin v. HHS*, 62 F.3d 1403 (Fed.Cir.1995), the Federal Circuit addressed that exact issue. *Martin* dealt with a provision of the Vaccine Act that "bars the filing of a Vaccine Act petition by persons who have filed a civil action seeking damages for the same injury that is the subject of their Vaccine Act petition." *Id.* at 1405. The petitioners in that case had filed such a civil action, and therefore, their petition was dismissed for lack of subject matter jurisdiction. *Id.* They argued, however, that even if the Court lacked jurisdiction over that petition, "the Vaccine Act independently provides jurisdiction for the award of attorneys' fees and costs to persons whose petitions are otherwise barred." *Id.* The Federal Circuit concluded that "because the special master had

no jurisdiction over the petition, there was no jurisdiction over the request for attorneys' fees and costs." *Id.* 1406–07.

The Brices contend that their jurisdictional defect was different from that in *Martin*, and that it was instead similar to the one dealt with in *Jessen v. HHS*, No. 94–1029V, 1997 WL 48940 (Fed.Cl. Jan.17, 1997), and *Long v. HHS*, No. 91–0326V, 1995 WL 774600 (Fed. Cl. Dec. 21, 1995). Both *Jessen* and *Long* dealt with a provision of the Vaccine Act, now repealed, which required petitioners to incur at least $1,000 in unreimbursed medical expenses before they could initiate such a claim. *Jessen*, 1997 WL 48940, at *1–2; *Long v. HHS*, 1995 WL 774600, at *4. In both of those cases, the special master held that, even though the petitioner had failed to meet that requirement, jurisdiction remained to award attorneys' fees. *Jessen*, 1997 WL 48940, at *23; *Long v. HHS*, 1995 WL 774600, at *5. The Federal Circuit agreed with the determination that the $1,000 requirement was not one that should preclude jurisdiction over attorneys' fees in *Black v. HHS*, 93 F.3d 781 (Fed.Cir.1996). The Federal Circuit, however, did not allow independent jurisdiction for attorneys' fees, but instead determined that jurisdiction was not lacking in certain instances in which the petitioners had failed to meet the $1,000 requirement before initiating the claim. *Id.* The Court said nothing about independent jurisdiction for attorneys' fees as the issue regarding the $1,000 requirement dealt with whether the petitioner would be allowed to file a supplemental pleading alleging additional expenses in order to retain jurisdiction over the claim. *Id.* at 791. The Federal Circuit held that the petitioner could file such a supplemental pleading, but it stressed that "[w]hat is critical in light of the statutory scheme is that the expenses necessary to reach the $1000 threshold be incurred within the limitations period...." *Id.* at 792. The Brices, therefore, were mistaken in their belief that the $1,000 requirement provision was analogous to the statute of limitations provision with respect to this issue. Where there is no jurisdiction over the petition, as is the case when the statutory deadline has passed, there is no jurisdiction over the award of attorneys' fees.

It also must be noted that this Court recently addressed this same issue in *Hebern v. United States*, 54 Fed.Cl. 548 (2002).. In *Hebern*, 54 Fed.Cl. 548, as in this case, the special master dismissed a Vaccine Act petition as barred by the statute of limitations, and the petitioners thereafter moved for attorneys' fees and costs. The special master denied that motion for lack of jurisdiction, and the petitioners appealed. *Id.* Judge John P. Wiese, of this Court, held that *Martin* was controlling precedent, and that "[b]ecause the court ... had no jurisdiction to hear the petitioners' claim in the first instance, it correspondingly had no jurisdiction to award attorneys' fees." *Id.* at 549. There is no reason why this case should have a different outcome, and therefore, this Court holds that the special master, and consequently this Court, lacks jurisdiction over the petitioners' motion for attorneys' fees.

2. *There is no necessity exception to the requirement that a court have jurisdiction over a Vaccine Act petition in order to award attorneys' fees.*

■ In the alternative, the Brices argue that any general rule prohibiting payment of attorneys' fees and costs should be subject to a necessity exception. They provide examples of other instances in which courts have recognized the necessity exception and propose that this Court extend the exception to include the payment of attorneys' fees and costs for appellate proceedings in which a Vaccine Act petitioner, in good faith, has challenged a dismissal of the petition by the Court of Federal Claims for a lack of subject matter jurisdiction. The Brices contend that such an exception is necessary because neither the Federal Circuit nor the Supreme Court allow the parents of a minor child to represent their child in such a case, thus forcing them to employ an attorney in order to have their case heard in those forums. The Brices maintain that, as the Vaccine Act prohibits an attorney from accepting fees in excess of those which are awarded by the court, it is necessary to provide such an exception in order to allow the appellate litigation of genuine issues regarding subject matter jurisdiction.

The first group of cases the Brices cite as analogous situations in which courts have allowed a necessity exception involve judicial disqualification. *United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980); *Williams v. United States*, 240 F.3d 1019 (Fed.Cir.2001); *Bolin v. Story*, 225 F.3d 1234 (11th Cir.2000). The Supreme Court encountered a situation in *United States v. Will*, 449 U.S. at 212, 101 S.Ct. 471, in which, by the very nature of the action, all Article III judges had an interest in the outcome of the case. There is a general rule that states that where a judge has such an interest, he is disqualified from hearing it, and should step "aside and allow[ ] the normal administrative processes of the court to assign the case to another judge not disqualified." *Id.* (citing 28 U.S.C. § 455). This caused a problem in that there were no judges who would not have such an interest. *Id.* The Court, therefore, held that, as the case otherwise would be left without a forum in which it could be heard, the Court would apply the Rule of Necessity. *Id.* at 212–17, 101 S.Ct. 471. The Court stated that this was the long-standing principle that " 'although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise.' " *Id.* at 213, 101 S.Ct. 471 (quoting F. POLLACK, A FIRST BOOK OF JURISPRUDENCE 270 (6th ed.1929)). This Court does not view these cases, or the rule derived from them, as persuasive with regard to creating a necessity exception in the instant case. In the judicial disqualification cases, there was a long-standing principle of a Rule of Necessity; in this case, there is no such long-standing principle. In the judicial disqualification cases, the cases would otherwise be left without a forum; in this case, there is a forum which may be used—and actually has been by these petitioners—an attorney-representative is simply required. Most notably, however, the judicial disqualification exception does not involve a judicially created waiver of sovereign immunity, as the exception in this case would.

The Brices assert, citing *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir.1980), *cert. denied*, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981), that the use of a necessity exception to provide jurisdiction where it would otherwise be lacking is not unprecedented. In *Dry Creek Lodge, Inc.*, the U.S. Court of Appeals for the Tenth Circuit created a limited exception to the general rule that Indian tribes enjoy immunity from suit, holding that U.S. District Courts have jurisdiction over cases in which an Indian tribe has acted to deprive a non-Indians of constitutional rights, and non-Indians "have no remedy within the tribal machinery nor with the tribal officials in whose election they cannot participate." *Id.* at 685. That holding, as narrow as it is, has been repeatedly criticized, distinguished, and limited. *See Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 885 n. 14 (2nd Cir.1996), *cert. denied*, 519 U.S. 1041, 117 S.Ct. 610, 136 L.Ed.2d 535 (1996); *Demontiney v. United States*, 255 F.3d 801, 815 n. 6 (9th Cir.2001); *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir.1992). In addition, the limited exception created in *Dry Creek Lodge, Inc.* is clearly inapposite to the instant case, and this Court sees no reason to extend it.

The Brices also cite the use of a necessity exception in certain bankruptcy cases. This exception allows receivers to pay certain creditors in a manner that is not specifically authorized by the bankruptcy code. *Miltenberger v. Logansport Railway*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882) (authorizing receivers to pay certain creditors at the beginning of a bankruptcy reorganization even though no provision to do so exists in the bankruptcy code). The Brices have failed to explain why the existence of such an exception in that very different instance should lead us to create a new one that would serve to waive the United States' sovereign immunity without congressional approval.

Finally, the Brices note the application of the necessity doctrine in certain criminal cases in which the "defendant can show that the criminal conduct was 'necessary' to prevent another serious harm." Pls.' Mot. For Review of Decision Den. Att'ys' Fees & Costs, at 7. None of the cases to which they cite, however, actually apply a necessity exception. *Id.* (citing *United States v. Bailey*,

444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (holding that a prison "escapee is not entitled to claim a defense of duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation [of the criminal law] was his only reasonable alternative"); *United States v. Gant,* 691 F.2d 1159, 1162–64 (5th Cir.1982) (holding that there is no necessity exception where a defendant does not pursue all reasonable, legal alternatives before violating the law); *United States v. Lewis,* 628 F.2d 1276 (10th Cir.1980) (holding that a bank robber is not entitled to a defense of necessity where the defendant claims that he had to rob the bank in order to be arrested and thus, be returned to prison where he would not have access to alcohol)). Even if the cited cases had applied a necessity exception, however, the Brices have, once again, failed to demonstrate how such an exception, this time to the penal code, relates to the judicial waiver of sovereign immunity that they are seeking in this case.

The special master correctly noted that all of the cases cited to by the Brices with regard to the creation of a necessity exception were inapposite. *Brice v. HHS,* 2002 WL 31051640, at *2. There is no necessity exception to the requirement that a court have jurisdiction before awarding attorneys' fees and costs. As discussed above, the Government has sovereign immunity with regard to this claim, and, as the Supreme Court has unequivocally held time and again, "[a] waiver of the sovereign immunity of the United States 'cannot be implied but must be unequivocally expressed.'" *Franconia Assoc. v. United States,* 536 U.S. 129, 122 S.Ct. 1993, 2001, 153 L.Ed.2d 132 (2002) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). This Court does not have the authority to overrule such a longstanding and fundamental principle by creating a necessity exception such as the one the petitioners request.

### CONCLUSION

For the reasons set forth above, the special master's dismissal of petitioners' claim for attorneys' fees and costs is AFFIRMED.

The Clerk will dismiss the petition and enter judgment for the defendant. No costs.