**Daniel Kevin O'CONNELL, Petitioner,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,
Respondent.**

**No. 97–682 V.**

United States Court of Federal Claims.

Nov. 12, 2004.

Daniel Kevin O'Connell, Emigrant, MT, pro se.

Mark W. Rogers, with whom were Peter D. Keisler, Assistant Attorney General, Timothy P. Garren, Director, and John Lodge Euler, Deputy Director, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Judge.

Petitioner, appearing *pro se*, seeks review in the United States Court of Federal Claims of a special master's dismissal of petitioner's Petition for Compensation (Petition) under the National Vaccine Injury Compensation Program (Vaccine Act or Act), 42 U.S.C. §§ 300aa–1 to –25 (2000). In a decision filed May 28, 2004, the special master noted that petitioner's claim, which alleged that a rubel-

la vaccine caused his chronic arthritis,[1] was initiated more than one year after the 36–month statutory deadline for filing his Petition had expired. *O'Connell v. Sec'y of Health & Human Servs.*, No. 97–682V, 2004 WL 1366011, at *2 (Fed.Cl.Spec.Mstr. May 28, 2004) (citing § 300aa–16(a)(2)). The special master rejected petitioner's argument that his claim nonetheless should be deemed timely filed, and his statute of limitations extended until 1999, under the "savings provision" of the Vaccine Act's statute of limitations. *O'Connell*, 2004 WL 1366011, at *6 (paraphrasing § 300aa–16(b)). The special master also rejected petitioner's argument that the statute of limitations for filing his Petition should be "equitably tolled," and emphasized that the Federal Circuit's decision in *Brice v. Secretary of Health & Human Services.*, 240 F.3d 1367 (Fed.Cir.2001), which issued while petitioner's claim was pending, made it clear that "the 'equitable tolling' doctrine is *not applicable* under any circumstances to the statute of limitations provision applicable here, § 300aa–16(a)(2)." *O'Connell*, 2004 WL 1366011, at *7. Because petitioner's claim was filed after the statute of limitations had expired, the special master determined that he lacked jurisdiction to hear petitioner's claim and dismissed the Petition as untimely. *Id.*

In accordance with 42 U.S.C. § 300aa–12(e)(1) (2000), petitioner timely filed this appeal on June 24, 2004. On appeal, petitioner claims (1) that his petition was timely filed under the "savings provision" of Vaccine Act's statute of limitations; (2) that the equitable tolling doctrine applies to petitioner's case; and (3) that the special master abused his discretion by delaying petitioner's claim for several years without petitioner's consent. *See generally* Pet'r's Mot. for Review (Mot.). For the reasons set forth below, the special master's decision is AFFIRMED.

## I. Background

### A. Factual Allegations[2]

Petitioner reported for active duty in the United States Marine Corps on or about

---

1. Because this claim was dismissed on jurisdictional grounds, the special master did not address whether petitioner suffers from chronic arthritis or, assuming that petitioner does suffer

from chronic arthritis, whether this condition was caused by a rubella vaccine.

2. The following facts, found by the special master or in the record before the special master, do not

October 19, 1993. Petition ¶ 1. On or about October 20, 1993 petitioner received a rubella vaccination at the Marine Corps Recruit Depot in San Diego, California. *See* Petition ¶¶ 1–2; Response to Petitioner's Motion for Review (Resp.) at 1. Although petitioner's military vaccination records appear to have been lost, petitioner attached to his Petition a list of the inoculations routinely administered to San Diego Marine Corps recruits prior to 1996. Petition Exh. B at 1. The "MMR" vaccination appears on this list, and the parties agree that "MMR" refers to the vaccine for measles, mumps, and rubella. Neither party appears to dispute that petitioner received a rubella vaccination on or about October 20, 1993. *See* Petition ¶ 2; Resp. at 1.

On or about November 1, 1993, petitioner began to suffer "symptoms initially characterized as shin splints and cramps in his calves." *O'Connell,* 2004 WL 1366011, at *1; *see also* Petition ¶ 5 (noting that "[p]etitioner complained of pain in his ankles, shins and calves"); Petition Exh. F (chronological record of medical care). These symptoms are alleged to have escalated during the following seven months, *see* Petition ¶¶ 6–21, and on June 3, 1994, petitioner was medically discharged from the Marine Corps because bilateral tibial stress fractures rendered him unfit for military duty, *id.* ¶ 22 & Exh. W. Prior to petitioner's discharge, the Navy Physical Evaluation Board rated his disability at twenty percent. Petition ¶ 22 & Exh. W. Petitioner sought a modification of his disability rating with the Department of Veterans' Affairs ("VA") on December 5, 1996. Petition ¶ 23. "The [VA] examiner diagnosed arthritis, with complaints of pain in the affected joints." *Id.* On or about December 11, 1996, petitioner received a written diagnosis of "service connected arthritis, bilateral hips, knees and ankles[,][e]ffective March 27, 1996," and was granted an additional ten percent disability rating for this condition. Id. ¶ 23 & Exhs. X, Z.

## B. Procedural History

On October 8, 1997, petitioner filed a Petition for Compensation under the National Vaccine Injury Compensation Program, alleging that his rubella vaccination "result[ed] in the 'table injury' known as chronic arthritis." Petition at 1. On January 12, 1998, respondent Secretary of Health and Human Services filed her motion to dismiss this Petition as untimely. Mot. to Dismiss. Respondent's motion was granted, and the Petition dismissed as untimely filed by a decision of the special master dated May 28, 2004. *O'Connell,* 2004 WL 1366011, at *7.

As described with particularity below, the record indicates that this case was delayed or suspended approximately one dozen times during the six and one-half years between petitioner's initial filing and the special master's decision. The record also indicates that all but one of these delays were requested by petitioner and approved by the special master. Because the timeliness of both petitioner's claim and the special master's decision are at issue in this case, a detailed procedural history follows.

### 1. Delays Initiated by Petitioner Between 1997 and 2001

This case initially proceeded according to a schedule that would have allowed the special master to issue a timely decision on June 8, 1997. See 42 U.S.C. § 300aa–12(d)(3)(A)(ii) (2000) ("The decision of the special master shall ... be issued as expeditiously as practicable, but not later than 240 days ... after the petition was filed"); RCFC App. B ("Vaccine Rules") R. 19(a) (2002) (describing the process for computing periods of time under the Vaccine Act).[3] However, beginning on June 8, 1998, the day that the special

---

appear to be contested by either party.

3. Petitioner filed his Petition on Wednesday, October 8, 1997. The limitations period for the special master's decision began to run on Thursday, October 9, 1997. RCFC App. B ("Vaccine Rules") R. 19(a) (2002) ("In computing any period of time, the day of the act, event, or default from which the designated period of time begins to run shall not be included."). Because the 240–day period expired on Saturday, June 6, 1998, the special master's opinion was due on Monday, June 8, 1998. *Id.* ("The last day of the [limitations] period ... shall be included, unless it is a Saturday, a Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a holiday.").

master's decision was due, petitioner requested, and the special master approved, suspensions of proceedings extending for more than one year. Petitioner requested the first suspension by telephonic motion on June 8, 1998, nearly three months after both parties filed their briefs. In this motion, petitioner asked that the " 'due date' for the special master's decision ... [be] suspended for an indefinite period of time (but for no longer than 180 days)." Order dated June 9, 1998 (citing 42 U.S.C. § 300aa–12(d)(3)(C)) ("In conducting a proceeding on a petition, a special master shall suspend the proceedings ... on the motion of either party" for no longer than 180 days total).

The record indicates that, following the initial suspension of proceedings, petitioner had difficulty determining his next step. On July 23, 1998, further to a status conference the previous day, the special master issued an order requiring petitioner to determine a course of action within two months or withdraw his claim. *See* Order dated July 23, 1998. The record does not disclose how or whether petitioner complied with that order. In any case, on December 7, 1998, the special master issued a formal notice that the statutory period for the special master's decision had expired six days earlier. Formal Notice dated Dec. 7, 1998; *see also* 42 U.S.C. § 300aa–12(d)(3)(A) (setting 240–day deadline, "exclusive of suspended time," for a special master's decision); § 300aa–12(d)(3)(C) (permitting this deadline to be extended for up to 180 days on the motion of either party); § 300aa–12(g)(1) (requiring the special master to "notify the petitioner under such petition that the petitioner may withdraw the petition ... [or that] the petitioner may choose ... to have the petition remain before the special master" if a deci-

sion has not issued within the statutorily-recommended period).

Petitioner elected to remain in the vaccine program on December 14, 1998. Pet'r's Election to Remain in the Program. For reasons that do not appear in the record, petitioner's case continued to languish. On May 11, 1999, the special master issued an order requiring petitioner's counsel to "take a serious look at the case" and determine by July 15, 1999 whether to (1) voluntarily withdraw, (2) file a supplemental brief discussing the applicability of the equitable tolling doctrine to petitioner's case, (3) request a status conference, or (4) file a status report and motion for an extension of time to choose among the first three options. *See* Order dated May 11, 1999. On July 21, 1999, petitioner requested a sixty-day extension "to determine whether ... [to] voluntarily dismiss the action, file a brief concerning the 'equitable tolling' issue or request a status conference." Pet'r's Status Report/Mot. for Extension of Time. The special master granted this extension and ordered petitioner to file a supplemental brief or withdraw his Petition by September 21, 1999. Order dated July 27, 1999.

After timely filing his supplemental brief, *see generally* Mem. in Supp. of Pet'r's Req. for Relief Pursuant to the Doctrine of "Equitable Tolling," petitioner took additional steps to prolong his case. On October 22, 1999, the special master issued an order deferring consideration of respondent's motion to dismiss and instructing the parties to address "the *substance* of petitioner's case." Order dated Oct. 22, 1999, at 1.[4] The special master explained that petitioner's medical records "ma[d]e it seem unlikely that this case could fall squarely within the parameters of any general rubella arthropathy 'omnibus' ruling."[5] *Id.* at 2. Accordingly, the

---

4. The special master's order was prompted by a legislative proposal by respondent to extend the statute of limitations period under 42 U.S.C. § 300aa–16(a)(2) from three years to six years. Order dated Oct. 22, 1999, at 1. Because this amendment would have rendered petitioner's claim timely—and respondent's motion to dismiss moot—the special master instructed the parties to focus on the merits of petitioner's claim. *Id.*

5. In 1992 and 1993, the special master "undertook an inquiry into the *general* issue of whether rubella vaccinations can cause persistent joint pain and related joint symptoms, and, if so, under what circumstances." *Wagner v. Sec'y of Health & Human Servs.*, No. 90–2208V, 1997 WL 617035, at *1 (Fed.Cl.Spec.Mstr. Sept. 22, 1997). Following these proceedings, the special master issued a "Rubella Arthropathy Omnibus Order" dated January 11, 1993 (Omnibus Order), which addressed the causal nexus between rubella inoc-

special master recommended that petitioner's counsel consider "whether an expert report *re* causation *specific to this case* [could] be obtained." *Id.* at 1–2 (emphasis added).

Notwithstanding this guidance, petitioner asked the special master to delay the case "pending the upcoming 'rubella arthropathy omnibus' proceeding." Order dated Jan. 7, 2000. The special master granted the request and instructed petitioner to file status reports every 90 days. *Id.* Petitioner sporadically complied with this order. Although his first status report was due in March, the record indicates that it was not filed until July 10, 2000. Thereafter, petitioner filed only one other status report. *See* Pet'r's Status Report dated Oct. 17, 2000.

The "rubella arthropathy omnibus" proceeding lasted well into 2001. *See, e.g.,* Notice dated July 18, 2001 ("On March 26 and 27, 2001, I conducted an evidentiary hearing concerning the *general* issue of whether the rubella vaccine causes chronic arthropathy."). Because the parties in several rubella arthropathy cases were attempting to settle, the special master refrained from issuing an analysis of the evidence in those cases for nearly one year. *See id.;* Order dated Oct. 3, 2001; Order dated Nov. 26, 2001. Although the Order dated January 7, 2000 had required petitioner to file status reports every ninety days, the record indicates that the only filings made in this case between January 2001 and October 2001 were initiated by the special master. *See* Order dated Feb. 6, 2001 (notifying the parties of an upcoming hearing on the causal nexus between rubella vaccinations and chronic arthropathy); Order dated July 18, 2001 (notifying the parties concerning the status of the "rubella arthropathy omnibus" proceeding); Notice dated

Oct. 3, 2001 (notifying the parties that the "Rubella Omnibus File" had been updated to include expert reports from the 2001 "rubella arthropathy omnibus" proceeding, and encouraging the parties to settle this case).

### 2. Delays Related to the *Brice* Case and Possible Legislation

While the parties awaited the "rubella arthropathy omnibus" ruling, the Federal Circuit issued its decision in *Brice v. Secretary of Health & Human Services,* 240 F.3d 1367 (Fed.Cir.2001), which held that the doctrine of equitable tolling was not available to extend the limitations period in claims arising under section 16(a)(2) of the Vaccine Act (so-called "post-Act" cases). *Id.* at 1368 (citing 42 U.S.C. § 300aa–16(a)(2)). On May 31, 2001, the Federal Circuit denied a petition for *en banc* review of *Brice, Brice v. Secretary of Health & Human Services,* 240 F.3d 1367, and a petition for certiorari was filed. On October 17, 2001, the special master met with the parties and issued an order that, "pursuant to discussion at [that] status conference," he would "continue to hold this case on [his] docket in an inactive status" until the *certiorari* petition in *Brice* was resolved, and until Congress ruled on "pending legislation that would [enlarge] the 'timely filing' requirements, perhaps retroactively." Order dated Oct. 26, 2001.

The Supreme Court denied *certiorari* one month later. *See Brice v. Thompson,* 534 U.S. 1040, 122 S.Ct. 614, 151 L.Ed.2d 538 (Nov. 26, 2001). During the following seven months, no legislation was passed to enlarge the Vaccine Act limitations period. On May 30, 2002, the special master met with both parties to announce that, in light of *Brice,* he

ulations and chronic arthritic conditions. *Id.* The special master issued an order in this case noting the "potential[ ] relevan[ce]" of the Omnibus Order, and provided both parties with a copy. Order dated Oct. 29, 1997 (enclosing as an Appendix a copy of the Omnibus Order). The Omnibus Order listed six criteria that, if all proven, would establish that "a petitioner has (or has had) a condition 'caused-in-fact' by a rubella vaccination, and is thus entitled to a Program award." Omnibus Order at 21–22.

"[T]he Vaccine [Act's] Injury Table was revised, effective March 10, 1995, to include 'chronic arthritis' as a table injury for the rubella

vaccine. *O'Connell,* 2004 WL 1366011, at \*2 (citations omitted). After these revisions to the Vaccine Injury Table were approved and published, 'several medical studies relevant to the general causation issue' issued. *Snyder v. Sec'y of Health & Human Servs.,* Nos. 94–58V, 95–706V, 96–82V, 98–205V, 98–723V, 99–80V, 00–664V, 02–579V, 2002 WL 31965742, at \*10 (Fed.Cl. Spec.Mstr. Dec. 13, 2002). As a result, parties in vaccine cases 'began to argue that … [the special master] should re-analyze the general causation issue in light of the new studies.' " *Id.* at \*11.

was required to reject petitioner's equitable tolling claim. *See* Order dated June 3, 2002. In that conference, he gave petitioner two months to develop an argument that his claim was timely filed under the Vaccine Act's "savings provision." *Id.* At the request of both parties, this deadline was extended for one month. *See* Order dated Aug. 7, 2002. In a status conference held on August 6, 2002, petitioner's counsel was instructed to file any supplemental briefing on the "savings provision" issue by September 16, 2002. *Id.* Petitioner did not file a supplemental brief and, in a status report dated December 9, 2002, indicated that he would not file any additional evidence. On January 8, 2003, the special master issued an order stating that he would address respondent's motion to dismiss "as soon as possible." Order dated Jan. 8, 2003.

### 3. Delays Resulting from the Withdrawal of Petitioner's Counsel

Before the special master could rule on defendant's motion to dismiss, petitioner's attorney asked to withdraw from the case. *See* Mot. to Withdraw as Att'y of R. dated Jan. 24, 2003. On January 29, 2003, the special master issued an order instructing petitioner "to file with the court *his own* written statement concerning whether he wishes to proceed on his own, without counsel, or instead to retain [his previous counsel] until such time as [petitioner] can retain another attorney." Order and Instruction to Clerk dated Jan. 29, 2003. Nearly two months later, petitioner notified the court that he wished to discharge his attorney and that he was "pursuing other attorneys in the Northwest states familiar with Vaccine Act litigation." Letter from O'Connell to Office of Special Masters dated Mar. 17, 2003.

On November 12, 2003, after "wait[ing] for about a year to give [petitioner] a chance to find other counsel," Transcript of Status Conference dated Nov. 13, 2003(Tr.), at 22:5–11, the special master provided the parties with a draft decision granting respondent's motion to dismiss and offered to discuss the

decision with the parties at a telephonic status conference the next day. Order dated Nov. 12, 2003; Tr. at 3:1–19. During that status conference petitioner asked for a four-month extension to obtain new counsel; the special master granted an extension until March 31, 2004. *See* Order dated Nov. 14, 2003.

According to the record, petitioner did not locate substitute counsel during this period. On May 28, 2004, the special master issued his decision granting respondent's motion to dismiss petitioner's claim as untimely filed. *O'Connell*, 2004 WL 1366011, at *7.

## II. Standard of Review

When deciding a motion for review of a special master's decision in a case arising under the Vaccine Act, the United States Court of Federal Claims "[has] jurisdiction to undertake a review of the record of the proceedings." 42 U.S.C. § 300aa–12(e)(2). This review is strictly limited to the record that was considered by the special master. *See* Rules of the Court of Federal Claims (RCFC) App. B (Vaccine Rules), R. 8(f) (2002). Rule 8(f) provides:

> Any fact or argument not raised specifically in the record before the special master shall be considered waived and cannot be raised by either party in proceedings on review of a special master's decision. This rule shall not apply to legal arguments raised by the party that stands in the role of the appellee on review.

*Id.* Accordingly, the court shall deem waived, and will not consider, any new facts offered by either party or any new legal arguments raised by petitioner because petitioner stands in the role of appellant, rather than appellee.[6]

After reviewing the record, the court may:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of

---

6. In his Motion for Review, petitioner offers two new exhibits and raises several new legal arguments. *See* Mot. at 1–4, ¶¶ I, V–VI, VIII, XII–XIII, & Exhs. 2–3. Rule 8(f) makes clear that the court cannot consider this new material on review or use it as a basis for reversing the decision of the special master.

discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2). The United States Court of Appeals for the Federal Circuit explains that the Court of Federal Claims "may set aside the decision of a special master only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion." *Turner v. Sec'y of Health & Human Servs.*, 268 F.3d 1334, 1337 (Fed.Cir. 2001) (citing 42 U.S.C. § 300aa–12(e)(2)(B)).

▮ To the extent that it is required to interpret or apply the statute of limitations provision in the Vaccine Act, the court further notes that it is bound by "sovereign immunity" principles of statutory construction. *See Stone Container Corp. v. United States*, 229 F.3d 1345, 1352 (Fed.Cir.2000) ("A statute of limitations is a condition on the waiver of sovereign immunity by the United States. Although courts 'should not construe such a time-bar provision unduly restrictively, [they] must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended.' " " (quoting *Block v. N. Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (quoting *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979))) (internal citation omitted) (alteration

in original)). Because "[t]he enactment of the Vaccine Program is the voluntary and express waiver of the Federal Government's sovereign immunity in cases where a person suffers vaccine-related injury ... [the] court must strictly construe such waiver in favor of the sovereign and restrict its reach to the provisions and conditions set forth by the text of the statute." *Estate of Aileen v. Sec'y of Dep't of Health & Human Servs.*, No. 01–688V, 2004 WL 1047393, at *2 (Fed.Cl. Spec.Mstr. Apr. 22, 2004) (internal citations omitted). Accordingly, this court will interpret the "Government's consent to be sued" under the Vaccine Act "strictly in favor of the sovereign" and not "enlarged ... beyond what the language requires." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951) and *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)); *see also Martin ex rel. Martin v. Sec'y of Health & Human Servs.*, 62 F.3d 1403, 1405 (Fed.Cir. 1995) ("[Petitioners] assert jurisdiction based on [the Vaccine Act]. Because the[ ] claim against the United States implicates its sovereign immunity from suit, the alleged jurisdictional grant must be narrowly construed.").

### III. Discussion

▮ In his motion for review, petitioner alleges the following three errors: [7]

---

7. In his Motion for Review, petitioner alleges three additional errors, which this court acknowledges, but need not explore in depth. First, petitioner argues that the special master "never properly evaluated and reviewed" his case and failed to consider bone scans and other medical evidence that "would have further distinguished [his] case from others." Mot. at 3, ¶ XII. Contrary to petitioner's claim, the special master's decision not to consider this evidence was proper. Before evaluating the merits of a petitioner's claim, a special master must determine whether the court has jurisdiction to hear the claim in the first place. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("The requirement that jurisdiction be established as a threshold matter ... is 'inflexible and without exception.' ") (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). Here, the special master determined that the

court lacked jurisdiction over petitioner's claim because his Petition was filed after the statute of limitations had expired. *O'Connell*, 2004 WL 1366011, at *7. Because petitioner failed to establish the threshold requirement of "jurisdictional timeliness," *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998), the special master properly declined to examine evidence supporting the merits of petitioner's claim.

Second, petitioner alleges that he was denied his "constitutional rights to counsel." Mot. at 3, ¶ XII; *cf. id.* at 1, ¶ 1 ("Petitioner was and is unable to seek and afford legal counsel and it appears this program will/has not provided any legal counsel"). This claim also must fail. A constitutional right to counsel attaches only in criminal proceedings, U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."). Nor does the Vaccine Act

(1) The special master misconstrued the Vaccine Act's statute of limitations provisions and erroneously concluded that petitioner's claim was time-barred. *See* Mot. at 1–2, ¶¶ II–VI.

(2) The special master abused his discretion by deferring his ruling on the equitable tolling issue until the petition for *certiorari* in *Brice* had been resolved, and erroneously concluded that the doctrine of equitable tolling does not apply to petitioner's claim, *See id.* ¶¶ V–IX.

(3) The special master abused his discretion by deciding to "delay review, evaluat[e], and/or examin[e] fully [petitioner's] case for more than three years[:] 1998, 1999, 2000." *Id.* ¶ X; see also *id.* ¶ VIII ("Petitioner was denied a timely hearing of his claim until more than three years after filing, which delays were not requested by petitioner, but by this court"); cf. Petitioner's Correction and Addendum to Appeal Req. at 2 ("This court neglected [p]etitioner[']s case on several occasions starting with 'Petitioner's case fell through the cracks' for 8–10 months after [it] was filed.").

The court addresses each alleged error in turn:

## A. Timeliness of Petitioner's Claim

### 1. Petitioner's Claim is Untimely Under the Vaccine Act's "Standard" Limitations Provision

■ Petitioner's claim was filed long after the Vaccine Act's "standard" limitations period had expired. Section 300aa–16(a)(2) makes clear that, with respect to a "post-Act" vaccination, *i.e.,* a vaccination administered after October 1, 1988, a timely Petition for Compensation must be filed within thirty-six months after the occurrence of the first symptom of the alleged injury. Here, petitioner alleges that he received a rubella vaccination on or about October 20, 1993 and that the first symptoms of his alleged injury occurred on or about November 1, 1993. Part I.A, *supra.* Accordingly, petitioner's statutory filing period expired thirty-six months later, on or about November 1, 1996. Because petitioner did not file his Petition until October 8, 1997, the special master correctly concluded—and the parties agree—that, "under a straightforward application of § 300aa–16(a)(2), this petition [was] time-barred." *O'Connell,* 2004 WL 1366011, at *2.

### 2. Petitioner's Claim is Not Revived by the "Savings Provision"

■ Even though he missed the statutory deadline for filing his claim, petitioner argues that his Petition should nevertheless be deemed timely filed under the "savings provision" of the Vaccine Act's statute of limitations. Mot. at 1, ¶ 2. The "savings provision" extends the deadline for filing a Vaccine Act petition for two years beyond the effective date of any revision to the Vaccine Act's Injury Table (Vaccine Injury Table or Table) that would "permit an individual who was not, before such revision, eligible to seek compensation under the [Vaccine Compensa-

---

require petitioners to be represented by counsel. *See* RCFC App. B (Vaccine Rules), R. 14(d) ("An individual may represent himself or herself . . . as a party. . . . The term 'counsel' or 'attorney' in the Vaccine Rules shall include unrepresented parties."). Further, the court notes that throughout much of the proceeding before the special master, petitioner was represented by two attorneys—one terminated by petitioner and one terminated with petitioner's consent—and that the special master granted petitioner several extensions of time to obtain counsel. *See* Tr. at 20:16–22:11, 23:9–24:20, 25:2–3.

Petitioner also alleges that the special master denied petitioner a "full and fair hearing" on both the merits of his case, *see* Mot. at 1, ¶ II; *id.* at 3, ¶ XII, and the equitable tolling issue, *id.* ¶ VIII. This allegation, too, must be rejected. The Vaccine Act vests the special master with broad discretion to conduct proceedings and does not require him to hold formal hearings if he deems such proceedings unnecessary. 42 U.S.C. § 300aa–12(d)(3)(B)(v) ("In conducting a proceeding on a petition a special master . . . *may* conduct such hearings as may be reasonable and necessary.") (emphasis added). Here, the special master's decision not to hold formal hearings was not an abuse of discretion. First, as noted above, the Petition was dismissed on jurisdictional grounds; accordingly, the special master's decision not to examine the merits of petitioner's claim was correct. Nor did the special master abuse his discretion by deciding the equitable tolling issue without a formal hearing. Both parties were given ample time to brief this point of law, and both parties thoroughly addressed the issue in their briefs.

tion] Program, or to significantly increase the likelihood of obtaining compensation." 42 U.S.C. § 300aa–16(b) (2000). As the special master noted, "the Vaccine Injury Table was revised, effective March 10, 1995, to include 'chronic arthritis' as a Table Injury for the rubella vaccine." *O'Connell,* 2004 WL 1366011, at *2 (citing 60 Fed.Reg. 7678, 7695 (Feb. 8, 1995)). Assuming that petitioner's injury could satisfy the criteria for "chronic arthritis," the special master correctly concluded—and both parties acknowledge—that the 1995 addition of chronic arthritis to the Vaccine Injury Table arguably would have "significantly increase[d] [petitioner's] likelihood of obtaining compensation," 42 U.S.C. § 300aa–16(b), and therefore would have extended his filing period until March 10, 1997. *See O'Connell,* 2004 WL 1366011, at *2; Mot. at 1, ¶ III; *id.* at 2, ¶ V; Resp. at 4. However, petitioner did not file his Petition until October 8, 1997—nearly seven months after this extended deadline would have expired. *See* Petition ¶ 1. Accordingly, the special master correctly concluded that the Petition would have been untimely even if the 1995 Vaccine Injury Table revision had triggered the "savings provision" in this case. *O'Connell,* 2004 WL 1366011, at *2.

 Petitioner claims that his Petition nonetheless is timely because it was filed within two years of a subsequent revision to the Vaccine Injury Table, which took effect March 24, 1997.[8] *See O'Connell,* 2004 WL 1366011, at *3 (citing 62 Fed.Reg. 7685, 7688 (Feb. 20, 1997)). Whereas the 1995 revision was substantive, creating an entirely new category of claimants under the Vaccine Act (those whose chronic arthritis resulted from certain vaccines containing rubella), the 1997 revision was largely linguistic, refining and clarifying these claimants' eligibility criteria. One clarification addresses the form of rubella vaccine that triggers a petitioner's eligibility for compensation. When chronic arthritis was added to the Vaccine Injury Table in 1995, the varieties of rubella vaccine listed in the Vaccine Injury Table were limited to include only "measles, mumps, rubella (MMR), measles, rubella (MR) or rubella

vaccine only." 60 Fed.Reg. 7678, 7694 (Feb. 8, 1995) (codified at 42 C.F.R. pt. 100). In contrast, the 1997 revision applies to "vaccines containing rubella virus (e.g. MR, MMR, [and] R)." 62 Fed.Reg. 7685, 7688 (Feb. 20, 1997) (codified at 42 C.F.R. pt. 100).

Petitioner argued before the special master that this revision "'significantly increased'" his odds of compensation by "'[b]roaden[ing] the category' of vaccines to which the chronic arthritis Table Injury applies to include '*any* vaccine containing the rubella virus'" *O'Connell,* 2004 WL 1366011, at *5 (quoting Pet'r's Resp. to Resp.'s Mot. to Dismiss at 8–9). The special master disagreed:

> [I]f petitioner claimed that he received his rubella vaccine in some form other than one of the three forms listed above in the 1995 version, then perhaps he could show that the 1997 version increased his likelihood of obtaining compensation under the Program. However, petitioner has made no such claim. He does not allege that his 1993 rubella vaccination was received in a form not covered by the 1995 Table.

*Id.* The court finds the special master's analysis of this point persuasive.

On appeal, petitioner contends that the special master misconstrued petitioner's argument and offers the following correction:

> Petitioner has claimed that by default he may have "received his rubella vaccine in some form other than one of the three forms listed above in the 1995[ ] version." Petitioner has sought to the best of his ability to verify what form of vaccine he received; however he was unable to obtain any vaccination records .... Therefore, by default petitioner did argue that any type of [rubella] vaccine form is possible ....

Mot. at 1–2, ¶ IV (quoting *O'Connell,* 2004 WL 1366011, at *5 (citation omitted)). The court finds petitioner's argument unpersuasive for two reasons.

First, contrary to petitioner's assertion, a lack of evidence identifying the type of rubel-

8. For the full text of both the 1995 and 1997 revisions, see *O'Connell,* 2004 WL 1366011, at *3–*5, or 60 Fed.Reg. 7678, 7694 (Feb. 8, 1995)

(codified at 42 C.F.R. pt. 100) and 62 Fed.Reg. 7685, 7688 (Feb. 20, 1997) (codified at 42 C.F.R. pt. 100).

la vaccine petitioner received does not establish that petitioner received a form not listed in the 1995 version of the Vaccine Injury Table. *See Campbell v. Dir., O.W.C.P., United States Dep't of Labor,* 846 F.2d 502, 508 (8th Cir.1988) ("The failure to prove a positive does not necessarily render the negative true, and the [Federal Coal Mine Health & Safety] Act does not suggest any such inference."); *Mich. Hosp. Ass'n v. Dep't of Soc. Servs.,* 738 F.Supp. 1080, 1084 (W.D.Mich.1990) ("The fallacy of plaintiffs' argument lies in their attempt to use the negative to prove the positive."). As a logical matter, petitioner's argument that a lack of evidence can prove an element of his claim must fail. The loss of petitioner's vaccination records, however unfortunate, does not establish that he received a rubella inoculation in a form other than those listed in the 1995 Table revision.

Second, petitioner's argument that he "may have" received a form of rubella vaccine not listed in the 1995 Table revision disavows the principal corroborating evidence that petitioner previously submitted to establish his eligibility for Vaccine Act compensation in the first place. To support his claim that he received a government-administered rubella inoculation, petitioner offered as the sole piece of documentary evidence to corroborate petitioner's own testimony a statement by a Marine Corpsman listing the vaccines routinely "given to Marine recruits at the Marine Corp[s] Recruit Depot in San Diego, California, prior to the year of 1996." Petition Exh. B at 1; *see also id.* ¶ 2 ("Shortly after arriving at the Marine Corps Recruit Depot, Petitioner was inoculated with the rubella virus, the records of which are not presently available .... Attached as Exh. B is a statement of the inoculations routinely given to all recruits"). This list includes the MMR vaccination and does not identify any other vaccinations containing rubella. *See* Petition Exh. B at 1.

Throughout the proceedings before the special master, petitioner relied on this exhibit to demonstrate a causal nexus between his inoculation and his illness. *See* Pet'r's Supplemental Rubella Filing, dated Dec. 1, 1997, at 1 (citing Petition Exh. B as evidence that he received a government-administered rubella vaccination); *cf. id.* at 1–2 & Exh. 2 at 1 (offering as evidence of causation a letter from Dr. Richard A. Nelson, M.D., which states: "This patient is known to have had a reaction to MMR vaccine while in [the] military. This is based on [petitioner's] reports of the local tissue reaction as well as subsequent studies that have shown that he does not have any other immune system response that would or should have initiated this."). Only after respondent moved to dismiss his Petition as untimely did petitioner attempt to argue that "he was inoculated for rubella ... but has no way of knowing the manufacturer, type or specific contents of the inoculation received." Pet'r's Resp. to Resp's Mot. to Dismiss at 2. Even here, however, petitioner relies on the list of military vaccinations that includes the MMR vaccine to support this proposition. See Pet'r's Resp. to Resp's Mot. to Dismiss at 2 (citing Petition Exh. B); *see also id.* at 4–5 (relying on Exhibit B to establish a *prima facie* Table Injury case by showing that "all Marine Corps recruits were given MMR, mumps, measles and rubella vaccinations").

▬▬ All the evidence in the record concerning the particular vaccine plaintiff received supports the inference that he received an MMR inoculation. According to petitioner's own records, no form of rubella vaccine other than MMR was given to recruits when petitioner joined the Marine Corps. *See* Petition Exh. B. Because MMR is listed as a covered vaccine under the 1995 Table revision, and because there is no evidence supporting petitioner's contention that he received his rubella inoculation in a form other than MMR, this court agrees with the special master that the 1997 Table revision could not have significantly increased petitioner's likelihood of compensation. Accordingly, petitioner's claim is not rendered timely by the Vaccine Act's "savings provision."[9]

---

9. On appeal, petitioner also advances a textual argument to support his claim that his Petition is timely under the "savings provision." Mot. at 2, ¶ V. Petitioner appears to allege that because he

"now" (as a result of the 1997 Table revision) meets the criteria for compensation, he is "now" entitled to invoke the "savings provision."

## B. Equitable Tolling

On review, petitioner contends that, even if his Petition was untimely under the Vaccine Act's "standard limitations" and "savings" provisions, his filing deadline nonetheless should be equitably tolled. Petitioner offers three arguments to support this claim: First, petitioner argues that the special master abused his discretion by waiting to decide the equitable tolling issue until the petition for certiorari in *Brice* had been resolved. Second, petitioner argues that, notwithstanding *Brice,* the special master erred by not applying the equitable tolling doctrine to petitioner's claim. Finally, petitioner argues that, had the special master undertaken such an analysis, he would have concluded that delays beyond petitioner's control justify equitable tolling in this case. The court addresses each argument in turn.

### 1. The Special Master's Decision to Wait for *Brice* to Resolve was Not an Abuse of Discretion.

██ The special master's opinion notes that, for much of the time that petitioner's claim was pending, "it was unclear whether the doctrine of 'equitable tolling' would [apply] to § 300aa–16(a)(2)." Accordingly, I elected to defer ruling on that issue pending the review of the "equitable tolling" issue by the Federal Circuit in *Brice v. Secretary of Health & Human Services. O'Connell,* 2004 WL 1366011, at *2 n. 4 (citation omitted). The special master also concludes that *Brice* ultimately prevented him from considering

whether petitioner's initial filing deadline could be equitably tolled. *See id.* at *7 ("[W]hile the 'equitable tolling' doctrine might have appeared to be potentially applicable to petitioner's case at the time in 1998 when petitioner's argument was filed, it is now clear, as a matter of law, that the doctrine can be of no assistance to petitioner in this case."). On review, petitioner seizes upon the phrase, "might have appeared to be potentially applicable ... in 1998," in the special master's opinion and argues that the special master abused his discretion by waiting to rule on the equitable tolling issue, which had been briefed by both parties in 1998. *See* Mot. at 2, ¶ VII ("Petitioner believes that 'equitable tolling' does apply to his claim[, and] barring any other relief that this claim be approved since 'equitable tolling' did apply at the time of petitioner's claim [and] even for several more years until 2001."); *id.* ¶ VIII ("Petitioner was denied a timely hearing of his claim until more than three years after filing, which delays were not requested by [p]etitioner but by ... [the special master] who said '... for much of that time it was unclear whether the doctrine of "equitable tolling" would be applicable to 300aa–16(a)(2).'"); *cf. id.* ¶ XII (arguing that petitioner's case was "never properly evaluated and reviewed," and that the special master's decision to defer ruling on the equitable tolling issue was "fatally harmful to our case"). The court is not persuaded by this argument.

As a threshold matter, petitioner's allegations are not supported by the record.

---

Although petitioner is barred from raising new legal arguments on review, *see* RCFC App. B, R. 8(f), discussed *supra* Part II, the court notes that this argument fails under a plain reading of section 300aa–16(b). Eligibility for compensation under a Table revision triggers the "savings provision" only if (1) eligibility is new or (2) eligibility is "significantly increase[d]." 42 U.S.C. § 300aa–16(b) (2000). Petitioner does not satisfy either test. The 1997 revision did not identify chronic arthritis as a new Table Injury that would trigger petitioner's potential eligibility for compensation; "new" eligibility for chronic arthritis sufferers was established in 1995. To the extent that petitioner is alleging that the 1997 Table revision made him "newly" eligible because it extended his filing deadline until 1999, this argument must be rejected. The "savings provision" is not a jurisdictional life-preserver for all claimants; it allows a petitioner

additional time to file only when the substantive law is changed in his favor. *See, e.g., Gorski v. Sec'y of Health & Human Servs.,* No. 97–156V, 1997 WL 739497, at *4 (Fed.Cl.Spec.Mstr. Nov. 13, 1997) ("[B]ecause the Vaccine Injury Table was in fact revised to include a new 'Table Injury' ... the possibility is raised that petitioner could benefit from the added filing period provided in 300aa–16(b)."); *see also Snawder v. Cohen,* 749 F.Supp. 1473, 1477 n. 4 (W.D.Ky.1990) (noting that the "savings provision" may be triggered "if the Vaccine Injury Table is revised to make vaccine-related injuries *which were not formerly compensable* eligible for compensation") (emphasis added). Nor has petitioner met his burden of establishing "significantly increased" odds of compensation because he has not proven that his rubella vaccination was administered in a form not listed in the 1995 revision. *See* Part II.A.2 *supra.*

When the special master issued his order deferring consideration of respondent's motion to dismiss until Brice was resolved, see Order dated Oct. 26, 2001, the case had already been stayed for eighteen months at petitioner's request. See Order dated Jan. 7, 2000 (granting petitioner's request to delay the proceedings pending the outcome of the "rubella arthropathy 'omnibus' proceeding"); Order dated Oct. 26, 2001 ("I will continue to hold this case on my docket in inactive status pending the outcome of ... the certiorari petition in the Brice case") (emphasis added). After certiorari was denied on November 26, 2001, *Brice*, 534 U.S. 1040, 122 S.Ct. 614 (2001), the special master continued to hold the case inactive, under petitioner's previously requested stay, until the "rubella arthropathy omnibus" proceeding concluded.

It is difficult to see how the special master's one-month stay pending the Brice decision altered the status of petitioner's claim at all. Before and after this stay, petitioner's case already was being held in an inactive status at petitioner's own request. Prior to the October 26, 2001 Order, there is no indication in the record that the special master unilaterally delayed this proceeding, and there is no indication that he "deferred [petitioner's case] with all cases involving MMR and/or 'equitable tolling'" for seven years, as petitioner alleges. Mot. at 3, ¶ XII. At most, the record indicates that the special master stayed the proceeding for one month pending the Supreme Court's ruling on the *certiorari* petition. This one-month stay was well within the special master's discretion.[10] *See Lan-*

*dis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."); *id.* at 256, 57 S.Ct. 163 (recognizing the vast discretion of a trial judge to stay proceedings in the interest of justice, especially where the pending proceeding is dispositive of an issue in the case, because "a decision in the cause then pending ... may not settle every question of fact and law in [similar] suits ..., but in all likelihood it will settle many and simplify them all"); *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed.Cir.1997) ("When and how to stay proceedings is within the sound discretion of the trial court.... [but a] stay so extensive that it is 'immoderate or indefinite' might be an abuse of discretion." (quoting *Landis*, 299 U.S. at 257, 57 S.Ct. 163)); *cf. United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 883 (Fed.Cir.1997) (emphasizing that a reviewing court "defers to the judgment of the trial court on such matters closely associated with the standard functions of the adjudicative process, so long as that judgment is not an abuse of the trial court's discretion.").

**2. The Special Master's Decision Not to Address the Equitable Tolling Issue was Proper**

■ *Brice* clarified the law on equitable tolling in the Vaccine Act context and the special master was obligated to follow this

---

**10.** In fact, the stay by the special master could only have inured to plaintiff's benefit. At the time of the stay, the law on equitable tolling in the Vaccine Act context was clear and quite unfavorable to petitioner. Not only was the special master obligated to follow *Brice;* a prior Federal Circuit decision also would have compelled him to dismiss petitioner's claim automatically. In *Weddel v. Secretary of Health & Human Services*, 100 F.3d 929 (Fed.Cir.1996), the Federal Circuit held that the doctrine of equitable tolling does not apply to Vaccine Act cases arising before October 1, 1988 ("pre-Act cases"). *See* 42 U.S.C. § 300aa–16(a)(1). Although its holding was limited to pre-Act cases, the Federal Circuit's rationale did not rely on distinctions between "pre-Act" and "post-Act" petitions. Rather, the *Weddel* court examined the Vaccine Act's text and legislative history and determined

that section 16(a)(1) was a statute of repose, drafted to "cut[ ] off a cause of action at a certain time irrespective of the time of accrual of the cause of action." *Weddel*, 100 F.3d at 931. The court then applied the longstanding principle that "equitable tolling does not apply to statutes of repose," *id.*, and concluded that the limitations provision in section 16(a)(1) could not be equitably tolled. *Id.* at 931–32 (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) and *Iacono v. Office of Pers. Mgmt.*, 974 F.2d 1326 (Fed.Cir.1992)). Because sections 16(a)(1) and 16(a)(2) are nearly identical, and because *Weddel's* result did not rely on a distinction between the two provisions, it is quite likely that *Weddel*—a decision that predates both *Brice* and petitioner's claim—would have compelled the dismissal of a post-Act case like petitioner's.

decision. Notwithstanding this precedent, petitioner argues on review that the special master should have found petitioner's claim eligible for equitable tolling because it raises an issue that was not presented in *Brice.* Petitioner notes a factual distinction between his case and *Brice* and argues that his case is unique because a government actor—rather than the petitioner—caused the late filing of his Petition. *See* Mot. at 3, ¶ IX ("Petitioner was delayed filing his claim by the VA by not officially releasing the findings of Petitioner's diagnosis [until after the statutory deadline expired].... This fact further allows petitioner to dispute the findings in *Brice* ... since Petitioner was delayed by the Federal Government, namely the VA as was not applicable in the *Brice* case ...."). Petitioner then quotes the special master's summary of *Brice's* holding,[11] and alleges that the *Brice* holding, as articulated by the special master, contains a linguistic loophole: "[W]ords stating 'not applicable under *any* circumstances,' do[ ] not say '*any and all* circumstances,' thus leaving open the question of 'all circumstances,' especially circumstances not under the control of Petitioner, namely the VA. So the [Federal Circuit] did not say the Vaccine program is 'immune automatically' from 'equitable tolling' ...." *Id.* (emphasis added) (citations omitted).

This argument must fail. Although the special master used the phrase, "applicable under any circumstances," when summarizing *Brice's* holding, the Federal Circuit's decision states, "We hold that equitable tolling is not available in [post-Act] cases." *Brice,* 240 F.3d at 1368. This statement is unqualified and does not contain the term "any," which petitioner found to be ambiguous. Furthermore, at the end of the *Brice* decision, the Federal Circuit reinforces its holding by stating that "equitable tolling [is] inconsistent with the existing statutory scheme." *Id.* at 1374. After *Brice,* limitations provisions in the Vaccine Act cannot be equitably tolled.

3. Equitable Tolling Would Not Have Been Warranted in This Case

 Even assuming that equitable tolling could have been considered here, the special master's failure to do so would have amounted to harmless error. Equitable tolling is an exceptional remedy, reserved for extraordinary circumstances, which "[f]ederal courts have typically extended ... only sparingly." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). For example, relief under the doctrine of equitable tolling has been granted "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* (footnotes omitted). In contrast, courts have "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). And the doctrine is not available in cases which amount to "what is at best a garden variety case of excusable neglect." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453.

 The party seeking equitable tolling of a statute of limitations bears the burden of proving that such relief is warranted, and must demonstrate " 'rare and exceptional circumstances' " warranting application of the doctrine. *Felder v. Johnson,* 204 F.3d 168, 170–71 (5th Cir.2000) (quoting *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998)), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000). When determining whether to apply the equitable tolling doctrine, courts consider it less appropriate in cases where, as here, the party seeking relief was represented by counsel. *See, e.g., Bronze Shields, Inc. v. N.J. Dep't of Civil Serv.,* 667 F.2d 1074, 1085 (3d Cir.1981) (noting that plaintiffs who had been represented by "able attorneys" could not rely on equitable tolling as a basis for relief); *Smith v. Am. President Lines, Ltd.,* 571 F.2d 102, 109–10 (2d Cir.1978) ("[T]he record demon-

---

11. The special master summarized *Brice's* holding as follows: "[T]he 'equitable tolling' doctrine is *not applicable* under any circumstances to the

statute of limitations provision applicable here." *O'Connell,* 2004 WL 1366011, at *7.

strates that [plaintiff] was represented by counsel ... and thus had access to a means of acquiring knowledge of his rights and responsibilities ... well within the [applicable limitations period].". When describing the requisite standard for obtaining relief, at least one court has emphasized that "due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling." *Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir.1993). Accordingly, equitable tolling will only be applied when "extraordinary circumstances beyond plaintiff's control made it impossible to file the claims on time." *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 595 (9th Cir.1991); *see also Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir.1990) ("When as here the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so.").

In this case, even if the special master could have applied the doctrine of equitable tolling to petitioner's claim, petitioner did not meet his burden of showing that this extraordinary remedy is warranted. This was not a case "(1) where defendant's wrongful conduct prevented plaintiff from timely asserting his claim; or (2) where extraordinary circumstances outside plaintiff[']s control make it impossible for plaintiff to timely assert his claim." *Forti v. Suarez–Mason,* 672 F.Supp. 1531, 1549 (N.D.Cal.1987). As a basis for tolling, petitioner claims that the VA did not "officially notify petitioner of his diagnosis of 'arthritis' in writing until May 1997"—two months after the filing deadline would have expired had the 1995 Table revision extended his limitations period. Mot. at 2, ¶ VI; *see also id.* at 3, ¶ IX ("Petitioner was delayed filing his claim by the VA by not officially releasing the findings of Petitioner's diagnosis until after the so[-]called deadline to file a petition of 'March 10, 1997[.]' "). However, this argument is refuted by petitioner's original Petition for Compensation, which both states as a fact and includes written evidence that petitioner was notified of his arthritis diagnosis in December, 1996—three months before his filing deadline expired. *See* Peti-

tion at ¶ 23. Petitioner had ample time to file his Petition before the statute of limitations expired, and his failure to file promptly amounts to the sort of "excusable neglect" for which equitable tolling is not available. *See, e.g., Brice v. Sec'y of Dep't of Health & Human Servs.,* 44 Fed.Cl. 673, 675–76 (1999) (" 'There were still five weeks remaining for petitioners to file a petition in a timely fashion, ample time within which to do so. Yet, petitioners waited eight and one-half months after their visit with Dr. Vining to assert their legal rights.' ... [T]he court simply cannot conclude that the special master acted irrationally in finding that petitioners did not act diligently when they 'waited eight and one-half months ....' ") (quoting *Brice v. Sec'y of Dep't of Health & Human Servs.,* No. 95–835V, 1998 WL 136562, at *2 (Fed.Cl. Spec.Mstr. Mar. 12, 1998)).

Prior to *Brice,* no court had ever equitably tolled the deadline for filing a Vaccine Act petition, even under circumstances far more sympathetic than petitioner's. *See, e.g., Goetz v. Sec'y of Health & Human Servs.,* 45 Fed.Cl. 340 (1999) (denying equitable relief where parents were not aware of the connection between their infant's DPT vaccination and his subsequent developmental delay until after the limitations period had expired), *aff'd* No. 00–5019, 2001 WL 65708 (Fed.Cir. 2001); *Spohn v. Dep't of Health & Human Servs.,* No. 95–0460V, 1996 WL 532610 (Fed. Cl.Spec.Mstr. Sept. 5, 1996) (denying equitable relief where petition was filed one day late and petitioner's error in calculating the filing deadline was based on an inconsistent notation in petitioner's medical records), *aff'd* 132 F.3d 52 (Fed.Cir.1997). The circumstances of petitioner's case do not support a departure from those authorities. Even if the doctrine could have been applied to petitioner's claim, the record before the special master would not have supported the equitable tolling of petitioner's limitations period.

C. Prejudicial Delay

▮ Finally, petitioner alleges that the special master abused his discretion by "delay[ing] review, evaluating and/or examining fully our case for more than three years[:] 1998, 1999, 2000." Mot. at 3, ¶ X. This alle-

gation is not supported by the record and must be rejected. There is no indication that the special master initiated any delays during these three years. Although the special master granted extensions of time that delayed his review of petitioner's case, most (if not all) of these delays were requested by petitioner, as described above in Parts I.B.1–3. The record indicates that this case proceeded on schedule until June 8, 1998, when petitioner's counsel made a telephonic motion to suspend the "due date" for the special master's decision. Order dated June 9, 1998 (granting petitioner's motion). While the court understands that petitioner sought several extensions with the hope that the governing law would change in his favor—either by legislation extending the Vaccine Act's limitations period, or through the substantive "rubella arthropathy omnibus" proceeding— the court cannot allow petitioner to claim years later that he was prejudiced by the same delays that he requested. There is no evidence in the record that petitioner was prejudiced by special master-initiated delays between 1998 and 2000; accordingly, petitioner's argument must fail.

IV. Conclusion

The court concludes that the special master did not abuse his discretion in this proceeding. For the foregoing reasons, the court upholds the findings of fact and conclusions of law in the special master's May 28, 2004 decision. Accordingly, the special master's decision that this Petition was not timely filed and must be dismissed for lack of jurisdiction is AFFIRMED. The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.